No. 22-15791

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

ANDREW AVILA,

*Plaintiff-Appellant,*

v.

MICHAEL A. FELDER, C.E.O. CHHS at Kern Valley State Prison and CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Eastern District of California
Case No. 1:21-cv-01510
Honorable Jennifer L. Thurston

---

## APPELLANT'S REPLACEMENT OPENING BRIEF

---

Daniel M. Greenfield*
Wynne Muscatine Graham
RODERICK & SOLANGE
  MACARTHUR JUSTICE CENTER
501 H Street NE, Suite 275
Washington, D.C. 20002
(202) 869-3434
daniel.greenfield@macarthurjustice.org
wynnemg@macarthurjustice.org

*Appointed Pro Bono Counsel for
Plaintiff-Appellant Andrew Avila*

*This brief was prepared with the substantial assistance of UCLA School of Law Prisoners' Rights Clinic students Catherine Charleston, Joseph Gaylin, and Brisely Martinez.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii

INTRODUCTION ............................................................................................ 1

JURISDICTIONAL STATEMENT .................................................................. 3

ISSUES PRESENTED...................................................................................... 3

STATEMENT OF THE CASE.......................................................................... 4

I.      Factual Background ............................................................................... 4

     A.    After Mr. Avila began suffering from eye pain and vision loss, medical personnel diagnosed him with a detached retina, which calls for immediate surgical repair, but Mr. Avila was forced to wait approximately three years for surgery, during which time other serious complications arose and he became blind in his right eye. ............................................................................................... 4

     B.    As Mr. Avila's pain worsened and his vision deteriorated, Defendant Felder, a prison administrator who is not trained in nursing or medicine—provided medical care to Mr. Avila. .................... 8

II.     Procedural History ............................................................................. 10

SUMMARY OF THE ARGUMENT ............................................................. 15

STANDARD OF REVIEW ........................................................................... 18

ARGUMENT ................................................................................................. 18

I.      Mr. Avila Stated A Plausible Claim That Mr. Felder Violated The Eighth Amendment. .......................................................................... 18

     A.    Mr. Avila's Severe Pain And Deteriorating Vision Constitute A Serious Medical Need. .................................................................. 20

     B.    By Providing Medical Care Despite His Lack Of Qualifications, Sticking With An Ineffectual Course Of Care Even After Its Failure Had Become Obvious, And Refusing To Authorize Surgical Intervention And Other Necessary Care, Mr. Felder Was Deliberately Indifferent To Mr. Avila's Serious Medical Need........... 21

         i.    Mr. Felder provided medical care without medical qualifications. ................................................................... 22

         ii.    Mr. Felder continued to provide ineffectual treatment to Mr. Avila after its ineffectiveness had been established. ........................ 24

iii.    Mr. Felder refused to authorize surgical intervention and other necessary care that could have preserved Mr. Avila's vision. .........25

II.    The District Court's Dismissal With Prejudice Resulted From Four Fundamental Errors: It Failed To Liberally Construe Mr. Avila's *Pro Se* Complaint; It Did Not Screen Mr. Avila's Complaint Under The Plausibility Standard; It Engaged In A Flawed Injunctive-Relief Analysis; And It Improperly Dismissed Mr. Avila's Complaint Without A Second Chance At Amendment. ...............................................................27

     A.    The District Court Erred In Failing To Liberally Construe Mr. Avila's Complaint. ......................................................................27

         i.    The district court erroneously concluded that Mr. Avila's original complaint undermined the allegations in his amended complaint. .......................................................................29

         ii.    The district court failed to account for Mr. Avila's plausible claim against unidentified medical personnel. ................................30

     B.    The District Court Applied The Wrong Standard In Dismissing Mr. Avila's Complaint At The Screening Stage. ..............................34

     C.    The District Court's Evaluation Of Mr. Avila's Request For Injunctive Relief Is Incorrect. ...................................................36

         i.    The district court erred by holding that Mr. Avila lacked standing to seek injunctive relief. ....................................37

         ii.    The district court erred in prematurely conducting an NNI analysis and in concluding that the relief sought by Mr. Avila was not sufficiently narrow. .....................................39

     D.    The Court Erred In Dismissing Mr. Avila's Complaint With Prejudice. ...........................................................................41

CONCLUSION ............................................................................44

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akhtar v. Mesa,*
  698 F.3d 1202 (9th Cir. 2012) ................................................................18, 28

*Arena v. Cervantes,*
  No. 1:21-cv-00928-BAM (PC), 2021 WL 3537173 (E.D. Cal. Aug.
  11, 2021) ........................................................................................................37

*Armstrong v. Schwarzenegger,*
  622 F.3d 1058 (9th Cir. 2010) ......................................................................40

*Balistreri v. Pacifica Police Dep't,*
  901 F.2d 696 (9th Cir. 1988) ........................................................................44

*Barnes v. Indep. Auto. Dealers Ass'n of Cal. Health & Welfare*
  *Benefit Plan,*
  64 F.3d 1389 (9th Cir. 1995) ..........................................................................5

*Blaisdell v. Frappiea,*
  729 F.3d 1237 (9th Cir. 2013) ......................................................................35

*Bourke v. City of San Diego Police Dep't,*
  132 F.3d 38 (9th Cir. 1997) ..........................................................................42

*Bretches v. Kirkland,*
  335 F. App'x 675 (9th Cir. 2009) ...................................................................4

*Brown v. Plata,*
  563 U.S. 493 (2011)........................................................................................40

*Byrd v. Maricopa Cnty. Bd. of Supervisors,*
  845 F.3d 919 (9th Cir. 2017) ......................................................16, 18, 27, 35

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983)..................................................................................37, 38

*Clement v. Gomez,*
  298 F.3d 898 (9th Cir. 2002) ..................................................................20, 21

*Colwell v. Bannister*,
    763 F.3d 1060 (9th Cir. 2014) ........................................................20, 25, 26, 29

*Cunningham v. Bird*,
    No. 1:22-cv-00306-JLT-SAB (PC), 2022 WL 1308261 (E.D. Cal.
    May 2, 2022)..............................................................................................37

*Doe v. Kelly*,
    878 F.3d 710 (9th Cir. 2017) ...........................................................23, 24

*Edmo v. Corizon, Inc.*,
    935 F.3d 757 (9th Cir. 2019) ...........................................18, 19, 40, 41

*Eldridge v. Block*,
    832 F.2d 1132 (9th Cir. 1987) ....................................................................41

*Eminence Capital, LLC. v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ..................................................................42

*Erickson v. Pardus*,
    551 U.S. 89 (2007)....................................................................................18

*Estelle v. Gamble*,
    429 U.S. 97 (1976)...............................................................................*passim*

*Farmer v. Brennan*,
    511 U.S. 825 (1994)...................................................................31, 32, 33

*Foman v. Davis*,
    371 U.S. 178 (1962)...................................................................................42

*Gillespie v. Civiletti*,
    629 F.2d 637 (9th Cir. 1980) ....................................................................30

*Gonzales v. Harmon*,
    No. 1:21-cv-00796-BAM (PC), 2021 WL 5179261 (E.D. Cal. Nov.
    8, 2021) ...................................................................................................37

*Gray v. Khoo*,
    No. 1:20-cv-01047-DAD-SAB (PC), 2021 WL 38182 (E.D. Cal.
    Jan. 5, 2021)...........................................................................................37

iv

*Hallet v. Morgan*,
  296 F.3d 732 (9th Cir. 2002) ...................................................................40

*Hoptowit v. Ray*,
  682 F.2d 1237 (9th Cir. 1982) ....................................................15, 23, 29

*Jett v. Penner*,
  439 F.3d 1091 (9th Cir. 2006) .......................................19, 25, 32, 34

*Jones v. Bock*,
  549 U.S. 199 (2007)..............................................................................39, 40

*Landrath v. City of Portland*,
  141 F.3d 1177 (9th Cir. 1998) .................................................................42

*Lolli v. Cnty. of Orange*,
  351 F.3d 410 (9th Cir. 2003) ...........................................................5, 32

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000) .............................................17, 39, 42

*Matthews v. Nat'l Football League Mgmt. Council*,
  688 F.3d 1107 (9th Cir. 2012) ...................................................................8

*Mayfield v. U.S.*,
  599 F.3d 964 (9th Cir. 2010) ...................................................................36

*Montecastro v. Newsome*,
  No. 1:19-cv-01065-BAM (PC), 2021 WL 1143437 (E.D. Cal. Mar. 25, 2021) ...................................................................................................37

*Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psychology*,
  228 F.3d 1043 (9th Cir. 2000) ...................................................................4

*Nordstrom v. Ryan*,
  762 F.3d 903 (9th Cir. 2014) .............................................................35, 39

*Oluwa v. Gomez*,
  133 F.3d 1237 (9th Cir. 1998) .................................................................40

*Pierce v. Cnty. of Orange*,
  526 F.3d 1190 (9th Cir. 2008) .................................................................40

v

*Porretti v. Dzurenda*,
11 F.4th 1037 (9th Cir. 2021) ...................................................................39

*Sanford v. Eaton*,
No. 1:20-cv-00792-JLT-BAM (PC), 2022 WL 1308193 (E.D. Cal.
May 2, 2022)............................................................................................36

*Snow v. McDaniel*,
681 F.3d 978 (9th Cir. 2012) ...................................................................26

*Stewart v. Aranas*,
32 F.4th 1192 (9th Cir. 2022) .......................................................15, 24, 29

*Thomas v. Ponder*,
611 F.3d 1144 (9th Cir. 2010) ..................................................................35

*Toussaint v. McCarthy*,
801 F.2d 1080 (9th Cir. 1986) ..................................................................23

*United States v. Webb*,
655 F.2d 977 (9th Cir. 1981) ..............................................................17, 42

*Valley Forge Christian Coll. v. Ams. United for Separation of Church
and State, Inc.*,
454 U.S. 464 (1982)............................................................................37, 38

*Wakefield v. Thompson*,
177 F.3d 1160 (9th Cir. 1999) ..................................................................30

*Wilhelm v. Rotman*,
680 F.3d 1113 (9th Cir. 2012) ...........................................................*passim*

*Williams v. Dirkse*,
No. 1:21-cv-00047-BAM (PC), 2021 WL 1264789 (E.D. Cal. Apr.
6, 2021) ...................................................................................................37

*Zimmerman v. City of Oakland*,
255 F.3d 734 (9th Cir. 2001) ....................................................................18

**Statutes**

18 U.S.C. § 3626(a)(1)(A) ...................................................................39, 40

28 U.S.C. § 1291 ...............................................................................................3

28 U.S.C. § 1331 ...............................................................................................3

28 U.S.C. § 1343 ...............................................................................................3

28 U.S.C. § 1915A .......................................................................................*passim*

42 U.S.C. § 1983 .........................................................................................3, 10

Cal. Bus. & Prof. Code § 2053.5 ....................................................................22

Cal. Code Regs. Tit. 15, § 3999.301 ...............................................................41

**Other Authorities**

Fed. R. App. P. 4(a)(1)(A) ................................................................................3

Fed. R. Civ. P. 15 .................................................................................17, 41, 42

Fed. R. Evid. 201(b)..........................................................................................8

*Cystoid Macular Edema*, CLEVELAND CLINIC (Oct. 16, 2023)
    https://my.clevelandclinic.org/health/diseases/14417-cystoid-
    macular-edema ..........................................................................................6

*Endophthalmitis*, CLEVELAND CLINIC (Nov. 17, 2022),
    https://my.clevelandclinic.org/health/diseases/24468-
    endolphthalmitis..............................................................................6, 7, 21

*Macular Pucker*, CLEVELAND CLINIC (Feb. 6, 2023)
    https://my.clevelandclinic.org/health/diseases/14207-macular-
    pucker........................................................................................................7

*Retinal Detachment-Diagnosis & treatment*, MAYO CLINIC (Sept. 07,
    2022) https://www.mayoclinic.org/diseases-conditions/retinal-
    detachment/diagnosis-treatment/drc-20351348.....................................5, 7

*Retinal Detachment-Symptoms & causes*, MAYO CLINIC (Sept. 07,
    2022), https://www.mayoclinic.org/diseases-conditions/retinal-
    detachment/symptoms-causes/syc-20351344...........................................5

*Uveitis*, CLEVELAND CLINIC (Feb. 23, 2021)
    https://my.clevelandclinic.org/health/diseases/14414-uveitis ...........7, 21

*Vitrectomy*, CLEVELAND CLINIC (Oct. 30, 2022)
    https://my.clevelandclinic.org/health/treatments/24402-vitrectomy.....................7

**INTRODUCTION**

After a routine cataract extraction, Andrew Avila developed "severe" pain in his right eye and began to go blind. Medical personnel diagnosed him with a detached retina and noted that his condition, if improperly managed, could result in "complete blindness." Although surgery was recommended, it was not provided for approximately three years, during which time Mr. Avila was diagnosed with additional painful and dangerous eye complications, several of which also called for surgical repair.

Mr. Avila alerted medical personnel—in person, via grievances, through health slips—that his pain was intensifying and his vision was deteriorating. In fact, he told them his blindness had progressed to the point that it had become difficult to walk or even tend to his personal hygiene. Rather than the surgical intervention that was called for, however, medical personnel kicked the can down the road and plied Mr. Avila with pills, ointments, and over-the-counter pain medication.

Making matters worse, while this crisis was unfolding, Defendant Michael Felder, then the principal healthcare administrator at Kern Valley State Prison, began to interfere with Mr. Avila's care. Mr. Felder has no training in medicine or nursing. Nonetheless, he assumed the role of treating physician for an extended period of time, during which, among other errors, he prescribed medicine that caused an allergic reaction Mr. Avila's already-deteriorating eye, ignored the unfolding crisis,

and refused to authorize surgical and other necessary intervention. By the time Mr. Felder authorized surgery, Mr. Avila was blind in one eye.

Proceeding pro se, Mr. Avila filed a federal civil rights law suit against Mr. Felder and unidentified medical personnel responsible for the mistreatment and unconscionable delays that caused his predicament. In addition to damages, he sought injunctive relief in the form of emergency medical care to restore his vision and remedy the painful "suffering [that] continues" to this day. Screening his case pursuant to 28 U.S.C. § 1915A, the district court dismissed his first complaint and, later, his amended complaint—the second time, with prejudice.

In so doing, it erroneously drew multiple inferences against rather than for Mr. Avila and failed to apply the proper standard of review (plausibility). It also rejected Mr. Avila's request for injunctive relief—using verbatim language recycled from factually dissimilar cases—based on inapplicable case law and a "need-narrowness-intrusiveness" analysis that was both premature and unsound. Finally, in declining to grant Mr. Avila leave to file a second amended complaint, the district court ignored both the liberal amendment standard for pro se plaintiffs and the four-factor test that counsels in favor of a non-prejudicial dismissal.

On appeal, Mr. Avila challenges these errors and the district court's improper screening-stage dismissal. His allegations—of the most serious nature—merit the

opportunity to proceed past screening, or at a minimum to be refined in an amended complaint.

## JURISDICTIONAL STATEMENT

Mr. Avila filed this action pursuant to 42 U.S.C. § 1983 in the United States District Court for the Eastern District of California. ER-68. The district court had jurisdiction over his claims under 28 U.S.C. §§ 1331 and 1343 because he alleged violations of the Eighth Amendment. After screening Mr. Avila's complaint under 28 U.S.C. § 1915A, the district court dismissed his action and entered final judgment against him on March 22, 2022. ER-16, ER-18. Mr. Avila filed a timely motion for reconsideration which the district court denied on April 25, 2022. ER-5. On May 24, 2022, this Court docketed Mr. Avila's timely notice of appeal. ER-84; *see also* Fed. R. App. P. 4(a)(1)(A). This Court has appellate jurisdiction to review the district court's final order under 28 U.S.C. § 1291.

## ISSUES PRESENTED

I.  Whether Mr. Avila stated a plausible Eighth Amendment claim against Mr. Felder in alleging that, while being aware that Mr. Avila suffered from serious eye conditions that could—and did—cause blindness and severe pain when left untreated, Mr. Felder provided counsel and prescribed medication without having any medical qualifications; continued on a "treatment" course after it was shown to be ineffectual; and denied Mr. Avila the medical care his conditions required for over a year—all while Mr. Avila's pain worsened and his vision deteriorated.

II. Whether Mr. Avila also stated a plausible Eighth Amendment claim against unidentified medical personnel in alleging that they were aware that Mr. Avila

3

suffered from eye conditions that demanded emergency medical attention and failed to provide that care, despite his worsening conditions.

III.    Whether the district court erred in rejecting Mr. Avila's request for injunctive relief on the bases of irrelevant caselaw and a premature need-narrowness-intrusiveness analysis.

IV.    Whether Mr. Avila, filing pro se from prison while suffering from partial blindness and severe pain, was entitled to amend his complaint given both the liberal amendment standard for pro se plaintiffs and that all four amendment factors weigh in favor of granting leave to amend.

<b>STATEMENT OF THE CASE</b>

**I.    Factual Background**

    **A.    After Mr. Avila began suffering from eye pain and vision loss, medical personnel diagnosed him with a detached retina, which calls for immediate surgical repair, but Mr. Avila was forced to wait approximately three years for surgery, during which time other serious complications arose and he became blind in his right eye.**

In January of 2018, Andrew Avila, a middle-aged man incarcerated at Kern Valley State Prison (KVSP), underwent a routine cataract extraction billed as a "simple, fast" procedure that would leave him with "perfect vision."[1] ER-81; ER-21-22. But when Mr. Avila developed "very bad pain" and started to go "blind in

---

[1] The factual background is compiled from Mr. Avila's amended complaint, ER-44; his objections to the report and recommendation and medical records attached thereto, ER-19; medical records attached to his original complaint, ER-68; and facts subject to judicial notice. Mr. Avila's allegations and reasonable inferences drawn therefrom are taken as true. *See, e.g., Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000); *Bretches v. Kirkland*, 335 F. App'x 675, 677 (9th Cir. 2009) (similar).

one eye," he became alarmed. ER-81-82. Soon after, Defendant Michael Felder, then the principal healthcare administrator at KVSP, and presently unidentified medical personnel began to make "everything . . . worse."[2] ER-81.

At an appointment following the cataract extraction, medical personnel documented that Mr. Avila's retina had become detached.[3] ER-21. At that time, they also noted the following: first, that a retinal detachment can result in "complete blindness;" second, that treatment entails surgical intervention; and third, that a surgical consult was on the books. ER-22-25. Time was of the essence because "[t]he longer retinal detachment goes untreated, the greater [the] risk of permanent vision loss;" surgery should therefore be performed "within days of diagnosis."[4] Nonetheless, the "recommend[ed] surgery" was not provided until 2021,

---

[2] Mr. Avila informed the district court that he could not name all putative defendants because he did not know their names. ER-20.

[3] Cataract surgery is a known cause of retinal detachment. *Retinal Detachment–Symptoms & causes*, MAYO CLINIC (Sept. 07, 2022), https://www.mayoclinic.org/diseases-conditions/retinal-detachment/symptoms-causes/syc-20351344. This Court may take judicial notice of commonly accepted medical facts. *E.g.*, *Barnes v. Indep. Auto. Dealers Ass'n of Cal. Health & Welfare Benefit Plan*, 64 F.3d 1389, 1395 n. 2 (9th Cir. 1995) ("Well-known medical facts are the types of matters of which judicial notice may be taken."); *Lolli v. Cnty. of Orange*, 351 F.3d 410, 419 (9th Cir. 2003)

[4] *Retinal Detachment–Symptoms & causes*, MAYO CLINIC, *supra*; *Retinal Detachment–Diagnosis & treatment*, MAYO CLINIC (Sept. 07, 2022) https://www.mayoclinic.org/diseases-conditions/retinal-detachment/diagnosis-treatment/drc-20351348.

approximately three years later. ER-24; *see also* ER-20-22, ER-28, ER-32; ER-76-78.

Suffering from an untreated, detached retina, Mr. Avila's eyesight began to further deteriorate, the pain got worse, and additional, preventable, complications arose. ER-81-82. He developed chronic endophthalmitis, ER-76, a painful and dangerous inflammatory infection of the eye that can cause vision loss.[5] Like retinal detachment, endophthalmitis is commonly caused by complications of cataract surgery.[6] And when it is accompanied by vision loss, surgery is generally necessary.[7] But again, notwithstanding medical personnel's documented diagnosis and Mr. Avila's deteriorating vision, surgery was not provided until 2021, by which point at least a year had passed since the discovery of chronic endophthalmitis. ER-76-78; ER-20-22, ER-24, ER-28.

Other complications arose, too. Medical personnel diagnosed Mr. Avila with cystoid macular edema, ER-76, a form of retinal swelling associated with vision loss.[8] They diagnosed him with uveitis, ER-76, an inflammatory condition that can

---

[5] *Endophthalmitis*, CLEVELAND CLINIC (Nov. 17, 2022), https://my.clevelandclinic.org/health/diseases/24468-endolphthalmitis.

[6] *Id.*

[7] *Id.*

[8] *Cystoid Macular Edema*, CLEVELAND CLINIC (Oct. 16, 2023) https://my.clevelandclinic.org/health/diseases/14417-cystoid-macular-edema.

6

lead to permanent blindness.[9] They also diagnosed him with epiretinal membrane, ER-78, a vision-distorting wrinkle of the retina.[10] And although Mr. Felder documented that "[s]urgery correction" would be the "*only* effective treatment" for Mr. Avila's epiretinal membrane condition, ER-77-78 (emphasis supplied),[11] Mr. Avila was not operated upon until 2021, ER-20-22, ER-24, ER-28; ER-76-78. By that point, approximately three years had elapsed since Mr. Avila had been diagnosed with a detached retina and at least one year had passed since both the chronic endophthalmitis and epiretinal membrane diagnoses were recorded.

While this crisis unfolded, Mr. Avila repeatedly emphasized his plight to Mr. Felder and medical personnel, explaining for example, that the "pain is severe in my right eye," continuous, and amplified by "real bad headaches." ER-76, ER-81-82; ER-46-47. Mr. Avila notified them that his vision had become "so bad" that it was effectively "gone," that he could only "see light and dark with some shapes," that,

---

[9] *Uveitis*, CLEVELAND CLINIC (Feb. 23, 2021) https://my.clevelandclinic.org/health/diseases/14414-uveitis.

[10] See *Macular Pucker*, CLEVELAND CLINIC (Feb. 6, 2023) https://my.clevelandclinic.org/health/diseases/14207-macular-pucker.

[11] Mr. Felder specifically described a surgical procedure called "vitrectomy." ER-78. *See Vitrectomy*, CLEVELAND CLINIC (Oct. 30, 2022) https://my.clevelandclinic.org/health/treatments/24402-vitrectomy. Notably, vitrectomy is also a common surgical corrective for both the detached retina and chronic endophthalmitis afflicting Mr. Avila. *E.g.*, *Retinal Detachment-Diagnosis & treatment*, MAYO CLINIC, *supra* n. 4; *Endophthalmitis*, CLEVELAND CLINIC (Nov. 17, 2022), https://my.clevelandclinic.org/health/diseases/24468-endolphthalmitis.

in fact, he could not see well enough to tend to his personal hygiene or "see where [he was] walking." ER-76, ER-81-82; ER-46-47. And yet, despite Mr. Avila's complaints, medical personnel's diagnoses, and their recognition that surgical intervention was necessary and appropriate, ER-21-25; ER-78, Mr. Avila was merely offered non-surgical care—such as ointments, pills, and over-the-counter pain medication—until three years had elapsed since the diagnosis of a detached retina that medical personnel noted could result in "complete blindness." ER-76-78; ER-20-22, ER-24, ER-28.

**B.     As Mr. Avila's pain worsened and his vision deteriorated, Defendant Felder, a prison administrator who is not trained in nursing or medicine—provided medical care to Mr. Avila.**

While Mr. Avila was losing his eyesight, Mr. Felder, then Chief Executive Officer for healthcare at KVSP, was involved with Mr. Avila's medical care in two ways.[12] ER-46-47. To start, Mr. Felder assumed the role of treating physician, ER-46-47, even though he is neither licensed to provide medical care nor trained in medicine.[13] Perhaps unsurprisingly, Mr. Avila's vision did not improve under the

---

[12] Throughout the proceedings in the district court, Mr. Avila incorrectly identified Mr. Felder as a medical doctor. *E.g.*, ER-47.

[13] *See*, *e.g.*, *California State Prison Solano (SOL), About the Health Care CEO*, https://www.cdcr.ca.gov/facility-locator/sol/ (last visited Dec. 8, 2023). This Court is also authorized to take judicial notice of Mr. Felder's professional training given that it is a public and undisputed fact. *E.g.*, *Matthews v. Nat'l Football League Mgmt. Council*, 688 F.3d 1107, 1113 n.5 (9th Cir. 2012); Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is

care of an administrator trained in business administration and environmental management. Although Mr. Avila communicated his medical needs to Mr. Felder during "several" "face to face" meetings, at which time Mr. Avila described his intense pain and near blindness, Mr. Felder merely "read [Mr. Avila's] chart" and "prescribe[d] medication" that caused an allergic reaction in and further damaged Mr. Avila's right eye. ER-46-47.

Faced with this unfolding emergency, Mr. Felder "refused" for at least one year to authorize the "emergency outpatient" care, including the recommended surgical interventions, that Mr. Avila plainly needed to save his eyesight. ER-47; ER-32. Having "decided" that enhanced medical care was "not warranted," ER-32, Mr. Felder would not budge even when Mr. Avila reminded him that prison policy obligated him to "send [him] to [the] hospital" under the circumstances. ER-47. Nor was Mr. Felder moved by his own admission that "[s]urgery" was "the only effective treatment" for at least one of Mr. Avila's complications, ER-78, or the chart notes indicating that surgery was called for and Mr. Avila risked "complete blindness." ER-23. Instead, Mr. Felder just kicked the can down the road, instructing Mr. Avila

---

generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be questioned.").

that medical personnel would "continue to . . . monitor" his conditions, that Mr. Avila should "discuss further" with them "if the issue[s] still persist[]." ER-78.

By 2022, when Mr. Avila turned to the federal courts for help, he was in pain, blind in one eye, and, notwithstanding the provision of at least some surgical treatment, still being denied the "medical attention" he required to prevent additional pain and permanent vision loss. ER-46-47, ER-50; ER-33.

## II. Procedural History

Without the assistance of counsel, Mr. Avila filed a 42 U.S.C § 1983 lawsuit against Mr. Felder; California Correctional Health Care Services (CCHS); and unidentified medical personnel employed by or under contract to the California Department of Corrections and Rehabilitation (CDCR) or CCHS. ER-68-69, ER-74, ER-81-82. He handwrote his complaint on the court-prepared form that directed him to state the facts of his case as "briefly as possible." ER-70.

Mr. Avila alleged that Mr. Felder and unidentified medical personnel knew that he was suffering from "severe" eye pain caused by "chronic endopht[ha]lm[it]is; retinal detachment; a retinal tear; uveitis; and cystoid macular edema," yet "failed to respond to [the] emergency" by providing the "needed eme[r]gency medical attention." ER-69-70, ER-74. Mr. Avila attached to the complaint CCHS medical records that documented his suffering, his diagnoses, and Mr. Felder's acknowledgment that "[s]urgery" was the "only effective treatment" for at least one

10

of the diagnosed complications. ER-77-78, ER-81-82. Invoking federal and state law, ER-68, ER-72-75, Mr. Avila sought relief in the form of monetary damages and an injunction ordering "emergency exp[e]dited" eye care, ER-70.

After Mr. Avila paid the filing fee in full, ER-65, the district court screened the case pursuant to 28 U.S.C. § 1915A, ER-52. To start, the district court correctly observed that CCHS was immune from suit under the Eleventh Amendment. ER-56. It failed to recognize, however, that Mr. Avila had also attempted to sue unidentified CCHS or CDCR personnel. *See, e.g.*, ER-69 (listing unidentified personnel—noted by "et [] al[.]"—as additional defendants).

Turning to the merits, the district court recognized that Mr. Avila had adequately alleged the objective prong of an Eighth Amendment claim—i.e., "a serious medical need" in the form of "pain and eye problems which resulted in the loss of vision." ER-57. It concluded, however, that Mr. Avila had failed to adequately allege the subjective prong of the claim—i.e., that "any defendant subjectively knew of and disregarded" his eye conditions. ER-58. The district court based its subjective-prong determination on the fact that "documents attached to the complaint indicate" that Mr. Avila was "seen by a nurse, his treating physician, and an ophthalmologist;" "given medication"; and provided a diagnostic test—a "fluorescein angiography." ER-58. Based on that medical history, the district court concluded that Mr. Avila "mere[ly] disagree[d] with [the] diagnosis or treatment"

11

offered, and thus could not establish defendants' disregard. ER-58. It granted Mr. Avila leave to amend. ER-59.

Mr. Avila timely filed a first amended complaint against Mr. Felder and unidentified medical personnel. ER-44 (describing defendants as Michael Felder and "et al[.]"). Therein, Mr. Avila alleged that he saw "Doctor" Felder several times for medical care, at which time he complained that his right eye "hurts really bad," that he was "not really able to see," and that, as a result, he could neither "see where [he's] walking" nor tend to his basic hygiene. ER-46-47. Mr. Avila also alleged that, notwithstanding his repeated pleas for "emergency outpatient" care and prison policy mandating the immediate provision of such care under the circumstances, "Doctor" Felder merely "read [Mr. Avila's] chart and did nothing but prescribe medication that caused an allergic reaction" in his already-damaged eye. ER-46-47. Likewise, Mr. Avila alleged that "Doctor" Felder's year-long "refus[al]" to authorize necessary medical care caused Mr. Avila to "los[e] [right eye] vision permanently." ER-47. That catastrophe, Mr. Avila finally alleged, "could have been avoided if the defendant would have done his job." ER-47. As before, Mr. Avila requested monetary damages and "emergency medical attention" to treat his ongoing pain and vision loss. ER-50.

Mr. Avila's first amended complaint was also screened. ER-36. In response to Mr. Avila's request for injunctive relief in the form of emergency eye care, the

12

magistrate judge noted—using boilerplate, form language—*first*, that the remedy requested "may" fail to satisfy the Prison Litigation Reform Act's (PLRA) need-narrowness-intrusiveness requirement, and *second*, that the court was prohibited from granting injunctive relief to address the mere "possibility of an injury."[14] ER-41-42. The order otherwise did not engage in any analysis of Mr. Avila's complaint with respect to injunctive relief.

Turning to the merits, the magistrate judge concluded that, although Mr. Avila had adequately "allege[d] a serious medical need" in the form of "pain and eye problems which resulted in the loss of vision," he had once again failed to establish deliberate indifference to that need. ER-39-40. The magistrate judge premised this conclusion on two rationales. First, because Mr. Avila had received at least some medical attention—from both "Dr. Felder," who "read [his] chart" and "prescribe[d] medication," and "a nurse, his treating physician, and an ophthalmologist," who collectively performed a diagnostic test and prescribed medication—Mr. Avila's claim of constitutionally inadequate medical care was nothing more than the sort of "mere disagreement with diagnosis or treatment" that cannot "support a claim of

---

[14] The magistrate judge's determination that Mr. Avila had merely alleged the "possibility of an injury" is difficult to reconcile with the court's acknowledgement that Mr. Avila had, in fact, adequately alleged a serious medical need. *See infra* II.C.

deliberate indifference."[15] ER-40. Second, the magistrate judge concluded that it was immaterial that "Dr." Felder's prescription further injured Mr. Avila's eye because Mr. Avila purportedly failed to allege that he "informed Dr. Felder of the reaction and that Dr. Felder then failed to act." ER-40.

After the magistrate judge recommended dismissal with prejudice, ER-42, Mr. Avila timely filed objections. Therein, Mr. Avila provided additional CCHS documentation showing that both surgery and specialized medical care had been recommended but not timely provided, ER-23-24, ER-35, emphasized that "Dr. Felder" had personally "failed" to provide necessary treatment over an extended period of time, ER-32, and reiterated that "unknown RN's" and "CCHCS/CDCR employees"—whom he could not identify without discovery—had also contributed to the catastrophe, ER-20. Mr. Avila closed by noting that his "suffering continues." ER-33.

The district court adopted the report and recommendation over Mr. Avila's objections and dismissed his first amended complaint with prejudice. ER-17-18. It then denied Mr. Avila's motion for reconsideration. ER-3. Still proceeding pro se,

---

[15] The district court arrived at this determination, at least in part, by considering the records attached to Mr. Avila's original complaint, which detailed the history of care recounted *infra* at 4-10. *See* ER-40. Because those records indicate that Mr. Avila received at least some care, the district court (erroneously) construed them as an "admission or prior inconsistent statement." ER-40.

14

Mr. Avila timely filed a notice of appeal. ER-84. This Court then appointed pro bono counsel to represent Mr. Avila on appeal.

## SUMMARY OF THE ARGUMENT

Filing pro se from prison, while suffering from severe pain and vision loss, Mr. Avila made out a plausible Eighth Amendment claim against Mr. Felder sufficient to survive the screening stage. Specifically, he alleged that Mr. Felder exhibited deliberate indifference to his serious medical needs, *see Estelle v. Gamble*, 429 U.S. 97, 104 (1976), by failing to provide necessary treatment for eye conditions that are widely known—including by Mr. Felder—to cause significant pain and blindness when left untreated.

Mr. Felder exhibited deliberate indifference to Mr. Avila's serious medical needs in at least three ways. First, he provided "medical" counsel and "treatment" despite his lack of any medical qualifications. Unsurprisingly, his "care" not only failed to remedy Mr. Avila's conditions but made them worse. *See Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). Second, Mr. Felder persisted in a "treatment" course after it was shown to be not only ineffectual but damaging. *See Stewart v. Aranas*, 32 F.4th 1192, 1194 (9th Cir. 2022). And third, Mr. Felder refused to authorize the medical care Mr. Avila needed for over a year, despite his awareness that such

15

treatment was needed. *Estelle*, 429 U.S. at 104. Mr. Felder thus violated Mr. Avila's Eighth Amendment rights—several times over.

Despite these claims, the district court dismissed Mr. Avila's complaint, committing four fundamental errors in the process. First, the district court failed to liberally construe the complaint, drawing at least two inferences *against* rather than *for* Mr. Avila. *Byrd v. Maricopa Cnty. Bd. of Supervisors*, 845 F.3d 919, 922 (9th Cir. 2017). Specifically, it mistakenly concluded that Mr. Avila's original complaint—in which Mr. Avila noted that he had received some ineffectual medical care—undercut his allegations that the blatantly deficient care provided by Mr. Felder was unconstitutional. Moreover, the district court failed to recognize Mr. Avila's plausible claim against unidentified medical personnel, whom Mr. Avila was "unable to" sue because he "d[id]n't know" who they were. ER-20. Mr. Avila made out a plausible claim that these personnel were deliberately indifferent to his serious medical needs in that they failed to provide him with necessary eye care after they diagnosed him with a number of dangerous eye conditions and were informed about his deteriorating conditions. ER-77, ER-82.

Second, the district court erred in declining to apply the proper standard of review at the screening stage: plausibility. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). Mr. Avila described the seriousness of his conditions as well

16

as Mr. Felder's and unidentified medical personnel's awareness of those conditions and failures to respond to his needs. That suffices to meet the plausibility standard.

The district court committed a third error, too, in concluding that Mr. Avila lacked standing to pursue injunctive relief. First, citing two factually inapposite cases, the district court came to the unsupported conclusion that Mr. Avila had shown at most the "possibility of an injury" rather than an actual injury, ER-41-42, despite his allegations that he had already been diagnosed with a number of dangerous eye conditions and was experiencing severe pain and blindness. The district court then further erred in denying Mr. Avila's claim to injunctive relief based on a "need-narrowness-intrusiveness" analysis. ER-41. Not only is such an analysis inappropriate at the screening stage, but Mr. Avila is likely to satisfy its demands when it is conducted at the proper time.

Finally, the district court erred in dismissing Mr. Avila's complaint with prejudice. Federal Rule of Civil Procedure 15 permits parties to amend their complaints, and courts are required to apply this rule liberally, even after a party has amended once before. *See Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000). Indeed, all four considerations that courts use to determine whether to grant leave to amend weigh Mr. Avila's favor. *See United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981).

17

## STANDARD OF REVIEW

Orders dismissing complaints at the screening stage for failure to state a claim are reviewed de novo under 28 U.S.C. § 1915A. *Byrd v. Maricopa Cnty. Bd. of Supervisors*, 845 F.3d 919, 922 (9th Cir. 2017). In conducting its review, a court must "constru[e] the pro se complaint liberally and tak[e] all the allegations of material fact as true and in the light most favorable to" the plaintiff. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[P]ro se complaint[s], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."). When engaging in this inquiry, a court may consider exhibits attached to the record. *Akhtar v. Mesa*, 698 F.3d 1202, 1209, 1212-13 (9th Cir. 2012). Finally, the magistrate judge's decision to dismiss Mr. Avila's complaint with prejudice, instead of without prejudice, is reviewed for abuse of discretion. *See Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001).

## ARGUMENT

I. **Mr. Avila Stated A Plausible Claim That Mr. Felder Violated The Eighth Amendment.**

"[D]eliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To succeed on a claim for inadequate medical care, a prisoner must first "show a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Edmo*

18

*v. Corizon, Inc.*, 935 F.3d 757, 785 (9th Cir. 2019) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). The "prisoner must then 'show the [official's] response to the need was deliberately indifferent.'" *Id.* at 786 (quoting *Jett*, 439 F.3d at 1096).

The deliberate indifference prong "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096. In medical-care cases, deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096).

Mr. Avila set forth a plausible claim that he had a "serious medical need" to which Mr. Felder was "deliberately indifferent." Specifically, Mr. Avila's recognized eye conditions, which caused extreme vision loss and severe eye pain, constituted a "serious medical need"—a conclusion with which the district court agreed. And Mr. Felder was "deliberately indifferent" to that need in at least three ways. First, he offered medical care despite his obvious lack of medical qualifications. Second, he persisted in a course of treatment after it was shown to be both ineffectual and harmful. And third, he refused to authorize the medical care, including surgery, Mr. Avila plainly needed.

19

A.  **Mr. Avila's Severe Pain And Deteriorating Vision Constitute A Serious Medical Need.**

"[A] serious medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (internal quotations omitted). Mr. Avila's eye conditions did result in *both* "further significant injury" and "unnecessary" pain and thus amount to a serious medical need.

First, Mr. Avila's eye conditions put him at risk of "further significant injury" because they could—and did—cause pronounced vision loss. This Court has made clear that "vision loss" in one eye is a "significant injury" for the purpose of the Eighth Amendment. *Colwell v. Bannister*, 763 F.3d 1060, 1066-67 (9th Cir. 2014). Mr. Avila was diagnosed with a cascading series of dangerous conditions—including retinal detachment, cystoid macular edema, epiretinal membrane, uveitis, and endophthalmitis, ER-76-78; ER-21—several of which *alone* could result in vision loss, let alone all of them together. *See supra* at 5-7. As Mr. Avila complained to Mr. Felder, his vision had become so poor due to his lack of treatment for these conditions that he was "not really able to see," struggled to tend to his personal hygiene, and even had difficulty "walking." ER-46-47. Without timely treatment, he was placed at risk of permanent vision loss, ER-23, thus rendering his diagnoses a "serious medical need" under the Eighth Amendment. *See Clement*, 298 F.3d at 904.

20

Mr. Avila's eye conditions also caused significant pain, providing a second ground for finding that they constituted a "serious medical need" under the Eighth Amendment. *Id.* The conditions with which Mr. Avila has been diagnosed are commonly painful without proper treatment,[16] and Mr. Avila complained on multiple occasions of "severe" pain in his right eye, *see* ER-76-78, ER-81-82; ER-46-47. Thus, as the district court rightly found, Mr. Avila's eye conditions have resulted in and could continue to result in not only further injury but significant pain, and are therefore "serious medical condition[s]" under the Eighth Amendment. *Clement*, 298 F.3d at 904.

**B.** **By Providing Medical Care Despite His Lack Of Qualifications, Sticking With An Ineffectual Course Of Care Even After Its Failure Had Become Obvious, And Refusing To Authorize Surgical Intervention And Other Necessary Care, Mr. Felder Was Deliberately Indifferent To Mr. Avila's Serious Medical Need.**

To start, Mr. Felder was personally aware that Mr. Avila had a serious medical need. Mr. Avila informed Mr. Felder during "face to face" appointments of his emergent medical needs. ER-46-47. He reviewed Mr. Avila's medical records, which contained recommendations for surgery and noted the risk of permanent blindness. ER-77-78; ER-21-25. Indeed, Mr. Felder himself acknowledged Mr.

---

[16] *See, e.g.*, *Endophthalmitis*, CLEVELAND CLINIC (Nov. 17, 2022), https://my.clevelandclinic.org/health/diseases/24468-endolphthalmitis; *Uveitis*, CLEVELAND CLINIC (Feb. 23, 2021) https://my.clevelandclinic.org/health/diseases/14414-uveitis.

Avila's serious medical needs in writing. ER-77-78. Notwithstanding that knowledge, Mr. Felder remained deliberately indifferent to Mr. Avila's serious medical need for at least three reasons. First, Mr. Felder provided medical care despite his obvious lack of qualifications. Second, Mr. Felder persisted in a course of treatment after that course had been shown to be ineffectual. And third, Mr. Felder prevented Mr. Avila from timely obtaining the surgical intervention and other medical care he needed.

### i. Mr. Felder provided medical care without medical qualifications.

Over an extended period of time, Mr. Felder assumed the role of treating physician despite lacking the requisite training or licensing and notwithstanding his knowledge that Mr. Avila had been diagnosed with several serious medical conditions.[17] ER-77-78; ER-46-47 (noting "face to face" appointments with "Dr Michael A. Felder"); ER-20, ER-32 (same). He repeatedly attended to Mr. Avila as a "patient," prescribed medication in a misguided—and ultimately detrimental—attempt to treat one or more serious eye conditions, and generally directed the course

---

[17] *See* Cal. Bus. & Prof. Code § 2053.5 (defining the unlicensed practice of medicine as representing oneself as a physician, prescribing drugs, or treating a physical or mental condition under circumstances that cause or create a risk of great bodily harm).

of his treatment, including by denying him surgery and other emergent care. ER-77-78; ER-46-47; ER-20, ER-32.

Mr. Felder's attempt to treat a serious medical condition without the qualifications to do so is itself sufficient to establish deliberate indifference at the pleading stage. *See Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *Toussaint v. McCarthy*, 801 F.2d 1080, 1111-12 (9th Cir. 1986), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). As this Court has explained, the Eighth Amendment's guarantee to provide "adequate medical care" to prisoners would have "no meaning" if those providing medical care are not actually "competent to examine prisoners and diagnose illnesses." *Hoptowit*, 682 F.2d at 1253. Here, Mr. Felder, trained only in business administration and environmental management, provided medical care to Mr. Avila notwithstanding the fact that he was plainly at risk of permanently losing his eyesight. That reckless decision, which not only failed to reduce Mr. Avila's pain or improve his vision but made both worse, is the very essence of deliberate indifference. *See Hoptowit*, 682 F.2d at 1253; *Toussaint*, 801 F.2d at 1111-12.[18]

---

[18] Although this Court has held that "medical screening" need not be provided by "trained medical staff" when conducted under temporary, exigent circumstances— *e.g.*, by Border Patrol agents conducting a one-time cataloguing of urgent medical needs prior to short-term confinement—the "regular[]" provision of medical care may not be provided by "unqualified personnel." *Doe v. Kelly*, 878 F.3d 710, 722-23 (9th Cir. 2017). Mr. Felder's conduct therefore is not shielded by the exception

> ii. *Mr. Felder continued to provide ineffectual treatment to Mr. Avila after its ineffectiveness had been established.*

His lack of medical qualifications aside, Mr. Felder acted with deliberate indifference for a second reason: he persisted with ineffectual treatment for Mr. Avila long after its ineffectiveness had become clear. "[C]ontinuation of the same treatment in the face of obvious failure is" textbook "deliberate indifference." *Stewart v. Aranas*, 32 F.4th 1192, 1194 (9th Cir. 2022).

Mr. Felder's treatment plan—prescribing medication that, as Mr. Avila complained, was making his eyesight and pain worse; approving further "monitor[ing]" in lieu of long overdue treatment; and withholding necessary care until Mr. Avila became blind in one eye—is the very definition of an obvious failure. ER-77-78, ER-81-82; ER-46-47; ER-20, ER-32. Instead of modifying Mr. Avila's treatment, for example, by timely authorizing surgical intervention that might have restored Mr. Avila's vision in whole or part and lessened his pain, Mr. Felder stayed the course. By "ignor[ing]" "a visibly deteriorating condition" "despite numerous complaints," Mr. Felder violated the Eighth Amendment. *Stewart*, 32 F.4th at 1194.

---

recognized in *Doe*. At a minimum, Mr. Felder's unqualified provision of care raises questions of fact not susceptible to resolution before fact development "regarding the nature of services performed . . . and the level of qualification required to adequately render the services." *Id.* at 723 (quoting *Toussaint*, 801 F.2d at 1111-12).

24

> ### iii.    *Mr. Felder refused to authorize surgical intervention and other necessary care that could have preserved Mr. Avila's vision.*

Finally, Mr. Felder engaged in deliberate indifference by refusing to authorize enhanced care for over a year after Mr. Avila made the stakes clear. Deliberate indifference can manifest when prison officials "intentionally deny[] or delay[] access to medical care." *Estelle*, 429 U.S. at 104-05. Despite Mr. Avila's diagnoses with several vision-threatening conditions and Mr. Avila's persistent notifications that his vision and pain were worsening, ER-81-82, Mr. Felder refused to authorize surgery and other necessary emergency care, ER-77-78. This "delay[]" and "den[ial]" of "access to medical care" is a bread-and-butter manifestation of deliberate indifference. *See Jett*, 439 F.3d at 1096.

Moreover, Mr. Felder's refusal to authorize such care is not the sort of "mere disagreement" concerning the proper course of treatment that lacks a constitutional dimension. *See Colwell*, 763 F.3d at 1068-69. To start, Mr. Felder is not a qualified medical provider so his medical opinion should be entitled to no weight. But, even if this were a case of conflicting advice provided by trained medical professionals, selecting a treatment option that is "medically unacceptable under the circumstances" would nonetheless constitute deliberate indifference. *Colwell*, 763 F.3d at 1068-69.

Mr. Felder's plan was wholly "unacceptable" by medical standards: he failed to authorize surgery and other necessary emergency care for an extended period of

25

time even though Mr. Avila was experiencing intense pain and deteriorating vision; qualified personnel had documented that Mr. Felder suffered from several serious eye conditions, including those requiring surgery; and Mr. Felder himself acknowledged these conditions, and that surgery was the "only" effective way to treat epiretinal membrane. ER-77-78, ER-81-82; ER-21-25, ER-28-29, ER-35. Under even less troubling circumstances, this Court has held that such refusals were "medically unacceptable under the circumstances." *E.g.*, *Colwell*, 763 F.3d at 1068-69; *Snow v. McDaniel*, 681 F.3d 978, 986-87 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 774 F.3d 1076 (9th Cir. 2014). In *Colwell*, for example, "non-specialist[s] and non-treating medical officials" refused to authorize cataract surgery pursuant to a policy to deny surgery whenever one eye was functional even though surgery had been recommended by specialists. 763 F.3d at 1069. This Court concluded that the decision to deny surgical care "in the face of medical recommendations to the contrary" was "the very definition of deliberate indifference." *Id*. at 1068. Likewise in *Snow*, where non-specialist physicians refused to authorize the surgery recommended by specialists, this Court held that a reasonable jury could conclude that the denial of surgery "was medically unacceptable under all of the circumstances." 763 F.3d at 1068. Mr. Felder's refusal to authorize recommended surgery and other necessary care is even less defensible.

26

**II.     The District Court's Dismissal With Prejudice Resulted From Four Fundamental Errors: It Failed To Liberally Construe Mr. Avila's *Pro Se* Complaint; It Did Not Screen Mr. Avila's Complaint Under The Plausibility Standard; It Engaged In A Flawed Injunctive-Relief Analysis; And It Improperly Dismissed Mr. Avila's Complaint Without A Second Chance At Amendment.**

The district court committed at least four fundamental errors in dismissing Mr. Avila's case with prejudice. First, the district court failed to liberally construe Mr. Avila's complaint. Second, it failed to screen Mr. Avila's complaint against the proper standard—plausibility. Third, in evaluating Mr. Avila's claims for injunctive relief, it misapplied the Supreme Court's standing precedent and prematurely conducted a need-narrowness-intrusiveness analysis. Finally, the district court erred in ordering a prejudicial dismissal rather than allowing Mr. Avila a second chance to amend his complaint.

**A.     The District Court Erred In Failing To Liberally Construe Mr. Avila's Complaint.**

At the screening stage of a proceeding, a court must construe a pro se litigant's "complaint liberally," "taking all the allegations of material fact as true and [assessing them] in the light most favorable to [the plaintiff]." *Byrd v. Maricopa Cnty. Bd. of Supervisors*, 845 F.3d 919, 922 (9th Cir. 2017). A district court's "failure to consider a plaintiff's status as a pro se litigant" is on its own sufficient to constitute reversable error, but such errors are especially pronounced when a plaintiff faces additional obstacles to litigating, including disability or, in Mr. Avila's

27

case, vision impairment and severe pain. *See Akhtar v. Mesa*, 698 F.3d 1202, 1208-09 (9th Cir. 2012) (noting that the district court erred in failing to consider that the plaintiff was "a *pro se* litigant, who is illiterate, disabled, and has limited English skills").

The district court committed error in failing to acknowledge that it was required to liberally construe Mr. Avila's complaint and in drawing at least two inferences against, rather than for, him. Specifically, the district court erroneously inferred that the documents attached to Mr. Avila's original complaint undermined the allegations set forth in his amended complaint. And the district court further erred in identifying Mr. Felder as the only defendant in the case, thereby failing to take account of Mr. Avila's plausible Eighth Amendment claim against other unidentified medical personnel.[19]

---

[19] The magistrate judge's conclusion that Mr. Avila purportedly failed to allege that he "informed Dr. Felder of the reaction and that Dr. Felder then failed to act," ER-40, stems from a similar error. Mr. Avila alleged that he had "several" "face to face" meetings with Mr. Felder over the course of a year in which he described his deteriorating conditions. ER-46-47. Mr. Avila also alleged that he reminded Mr. Felder that he was required to "send [him] to [the] hospital" pursuant to prison policy, but that Mr. Felder refused for over a year. ER-46-47. From these allegations, the evidence cast in the light most favorable to Mr. Avila supports the conclusion that Mr. Avila had alerted Mr. Felder that his eye condition was worsening at least in part because of the medication Mr. Felder prescribed, and that Mr. Felder still refused to change course or authorize necessary medical care.

     *i.*       *The district court erroneously concluded that Mr. Avila's original complaint undermined the allegations in his amended complaint.*

The district court concluded that documents attached to Mr. Avila's original complaint constituted "prior inconsistent statements" that undermined the allegations in his amended complaint. ER-40. Specifically, the court determined that because the documents attached to the original complaint showed that Mr. Avila had received some medical treatment, his allegation of deliberate indifference against Mr. Felder was not plausible. ER-40.

But the fact that Mr. Avila received some care is wholly consistent with his allegation that the care he received from Mr. Felder was constitutionally deficient. The mere provision of any amount of medical care is not a get-out-of-jail-free-card, particularly where, as here, Mr. Felder lacked the "competen[ce] to examine prisoners and diagnose illnesses," *Hoptowit*, 682 F.2d at 1253, opt for treatment that is "medically unacceptable under the circumstances," *Colwell*, 763 F.3d at 1068-69, persist with "the same treatment in the face of obvious failure," *Stewart*, 32 F.4th at 1194, or "delay or intentionally interfere with medical treatment," *Willhelm*, 680 F.3d at 1122. Mr. Avila's properly construed allegations are that Mr. Felder committed each of these offenses, *see supra* I.B.i-I.B.iii, rendering any provision of care by other staff—much of which was independently reckless—totally irrelevant to determining whether Mr. Felder acted with deliberate indifference.

29

>    *ii.*     *The district court failed to account for Mr. Avila's plausible claim against unidentified medical personnel.*

The district court also improperly drew an inference against Mr. Avila by failing to recognize that he stated an independent, plausible claim of deliberate indifference against unidentified medical personnel. ER-36, ER-38. The district court identified Mr. Felder as the sole defendant in the case. ER-36. But Mr. Avila made clear his intention to sue additional medical personnel once he discovered their identities. ER-68-69, ER-74; ER-44, ER-47. As he explained, he "was unable to [sue] these unknown RN's . . . [because] you can't sue someone you don't know." ER-20. Under these circumstances, it was error to dismiss the complaint with prejudice. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("[W]here the identity of alleged defendants will not be known prior to the filing of a complaint . . . [a] plaintiff should be given an opportunity through discovery to identify the unknown defendants . . . ."); *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (similar). The district court's failure to recognize the unidentified personnel as defendants denied Mr. Avila the liberal construction to which he was entitled.

Moreover, Mr. Avila's complaint, liberally construed, made out a plausible Eighth Amendment claim against the unidentified medical personnel. For the reasons explained in Part I, Mr. Avila's eye conditions constituted a "serious medical need." *See supra* I.A. And, according to Mr. Avila's allegations and supporting documentation, the unidentified providers were "deliberately indifferent" to that

30

need. Specifically, they were aware of Mr. Avila's serious medical conditions and the requisite treatment for those conditions, but they nevertheless failed to provide it.

> a. The unidentified medical personnel were aware of Mr. Avila's serious medical need.

The complaint and supporting documents show that the unidentified medical personnel were aware of Mr. Avila's "serious medical need" for at least three reasons. First, they diagnosed him with a series of dangerous eye conditions. Second, Mr. Avila notified the unidentified personnel directly of his worsening symptoms. And third, Mr. Avila filed multiple medical grievances describing his severe pain and deteriorating vision.

First, medical personnel diagnosed Mr. Avila with a number of dangerous conditions, including retinal detachment, cystoid macular edema, epiretinal membrane, uveitis, and endopthalmitis. Several of these conditions are generally known to cause significant pain, put the patient at serious risk of long-term blindness, and require timely surgical intervention. *See supra* at 5-7. The dangers of inadequate treatment are, therefore, obvious. *See Farmer v. Brennan*, 511 U.S. 825, 843 (1994) ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."). Beyond the fact that Mr. Avila's medical needs were obviously serious, medical personnel themselves documented that at least one of Mr. Avila's conditions risked "complete blindness" and that one

31

or more required surgical intervention thus making clear that they were not in the dark. ER-78; ER-22, ER-23.

Second, Mr. Avila alleges that he directly informed the unidentified medical personnel of his continued pain after the limited treatment they provided had failed. Specifically, he told "medical staff" directly that he was experiencing "ongoing pain." ER-77, ER-82. Explicit statements about medical symptoms made to medical personnel constitute strong evidence that those personnel are aware of the symptoms. *See Lolli v. Cnty. of Orange*, 351 F.3d 410, 421 (9th Cir. 2003) ("[E]xplicit statements that [the arrestee] needed food because he was a diabetic could easily lead a jury to find that the officers consciously disregarded a serious risk."). And any lay person, let alone medical personnel, would know that severe eye pain accompanied by deteriorating vision constituted a "serious medical need[]" demanding immediate intervention. *See Farmer*, 511 U.S. at 835.

Third, the court can infer that the unidentified medical personnel were aware of Mr. Avila's "serious medical need" given that Mr. Avila filed grievances and medical slips about his pain and vision loss. ER-77, ER-82. A plaintiff is entitled to the inference that medical professionals are aware of filed grievances and medical slips, at least prior to summary judgment. *Jett*, 439 F.3d at 1097. Mr. Avila submitted a grievance alerting medical staff that he was "blind" in one eye and was experiencing "very bad pain" and headaches. ER-81. Through another grievance he

32

alerted staff to a "severe" and "sharp pain in [his] right eye." ER-82. He also noted

that the vision in his right eye was "gone" and his vision overall had gotten "so bad

now [he could] only see light and dark with some shapes." ER-82. Again, any lay

person would know that such symptoms constituted a "serious medical need[]," *see*

*Farmer*, 511 U.S. at 835, and medical providers all the more so.

> b.       The unidentified medical personnel failed to provide Mr.
> Avila with adequate medical care despite their awareness
> of his serious medical need.

Despite their awareness of his serious medical need, unidentified medical

personnel did not timely provide Mr. Avila with the surgical intervention or other

care that he needed. Over several years, Mr. Avila was diagnosed with multiple

conditions that each alone required surgical intervention. *See supra* at 5-7. He was

forced to wait more than a year for surgery subsequent to two of those diagnoses—

chronic endopthalmitis and epiretinal membrane. *See supra* at *id.* And he waited

approximately three years for surgery subsequent to the discovery of a detached

retina. ER-24; *see also* ER-20-22, ER-28, ER-32; ER-76-78. While medical

personnel ignored their own recommendation over an extended period of time, Mr.

Avila's pain worsened and his vision deteriorated to the point of blindness. ER-81-

82. Where medical personnel recognize that a particular medical procedure is

necessary—here, surgical intervention—the failure "to ensure [its completion] [is]

33

deliberate indifference to a serious medical condition." *Jett*, 439 F.3d at 1097-98; see also *Wilhelm*, 680 F.3d at 1123 (similar).

**B.      The District Court Applied The Wrong Standard In Dismissing Mr. Avila's Complaint At The Screening Stage.**

The district court failed to assess Mr. Avila's claims under the proper standard at the current stage of the proceeding: plausibility. Mr. Avila alleged that he informed "Dr." Felder over the course of several appointments for "treatment" that his right "eye hurt[] really bad;" that he is "not really able to see;" that, in fact, his vision had become so poor that he could neither see well enough to walk nor use the restroom. ER-46-47. He alleged that Mr. Felder did "nothing" with this information "but prescribe medication" that caused further injury to his right eye. ER-47. He alleged that notwithstanding the existence of an obvious emergency, Mr. Felder "refused" to "sign an emergency outpatient order . . . for a year." ER-47. And he alleged that Mr. Felder's refusal "permanently" cost him his right eye. ER-47.

Throughout the course of litigation, Mr. Avila provided the court with additional information that only bolstered his case. For example, he submitted medical grievances in which he complained of "ongoing," "severe," and "sharp" pain in his right eye, difficulty making out anything more than "light and dark with some shapes," and "blind[ness]." ER-82. He attached medical documents detailing his diagnoses and showing that Mr. Felder (and other medical personnel) recognized and documented that surgical intervention was necessary. ER-76-78; ER-21-25. And

34

he explained and attached medical documents showing that Mr. Felder (and other medical personnel) provided superficial treatment instead for far too long. ER-21-25; ER-46-47; ER-76-78.

At the screening stage, these details are more than sufficient to satisfy the plausibility standard. Indeed, the "threshold for proceeding past the screening stage" is a "low" one. *Byrd*, 845 F.3d at 924. A plaintiff need only offer sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Wilhelm*, 680 F.3d at 1121. Mr. Avila met this threshold.

To find Mr. Avila's complaint failed to state a claim because it would not be mistaken for one prepared by a lawyer would contravene this Court's repeated admonition that judges may "not hold missing or inaccurate legal terminology or muddled draftsmanship against" pro se litigants, particularly when they are filing from prison. *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013); *see also Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). Indeed, this Court has found plausibility satisfied based on far sparser allegations filed from prison. *Nordstrom v. Ryan*, 762 F.3d 903, 908, 911-12 (9th Cir. 2014). Against this backdrop, Mr. Avila's allegations were sufficient to state a plausible claim that Mr. Felder and other unidentified personnel knew of Mr. Avila's symptoms and conditions yet continuously provided him with medically unacceptable care and denied the

35

provision of adequate care, thus rendering them liable for deliberate indifference to a serious medical need in violation of the Eighth Amendment.

### C. The District Court's Evaluation Of Mr. Avila's Request For Injunctive Relief Is Incorrect.

The district court concluded that Mr. Avila's request for injunctive relief in the form of emergency eye care was improper for two reasons, both of which were erroneous. First, the district court appeared to conclude that Mr. Avila lacked standing to pursue injunctive relief, reasoning that he had shown at most the "possibility of an injury." ER-42. To the contrary, Mr. Avila has alleged a concrete injury in the form of severe eye pain and vision loss requiring immediate medical attention, *see Mayfield v. U.S.*, 599 F.3d 964, 969 (9th Cir. 2010), as the district court itself recognized in resolving the merits, ER-39. Second, the district court erred in concluding at this early stage of the proceeding that Mr. Avila "may" not have met the PLRA's "need-narrowness-intrusiveness" (NNI) requirement. Not only was the district court's evaluation of NNI at the screening stage premature, but Mr. Avila is likely to meet this requirement when an NNI analysis is conducted at a later stage of the litigation.[20]

---

[20] The seeming inapplicability of this reasoning to Mr. Avila's claims may stem from the fact that the entirety of the magistrate judge's injunctive-relief analysis appears to be a fill-in-the-blank form used (with little to no alteration from one case to another) by magistrate judges in the Eastern District of California to screen prisoner cases. *See, e.g.*, *Sanford v. Eaton*, No. 1:20-cv-00792-JLT-BAM (PC), 2022 WL

*i.*      *The district court erred by holding that Mr. Avila lacked standing to seek injunctive relief.*

The district court appeared to hold that Mr. Avila's request for injunctive relief was non-justiciable on the ground that he lacked standing. The court explained that it "is bound by the requirement that as a preliminary matter, it have before it an actual case or controversy," and "[i]f the Court does not have an actual case or controversy before it, it has no power to hear the matter in question." ER-41. The court did not, however, explain why Mr. Avila's suit did not involve a "case or controversy" or how eye pain and vision loss merely amount to "the possibility of an injury." Indeed, the court did not so much as reference Mr. Avila's allegations, and the two cases it cited as support for its apparent conclusion that Mr. Avila lacked standing—*City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983), and *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982)—are not applicable to Mr. Avila's case.

---

1308193, at *9 (E.D. Cal. May 2, 2022); *Arena v. Cervantes*, No. 1:21-cv-00928-BAM (PC), 2021 WL 3537173, at *3 (E.D. Cal. Aug. 11, 2021); *Cunningham v. Bird*, No. 1:22-cv-00306-JLT-SAB (PC), 2022 WL 1308261, at *3 (E.D. Cal. May 2, 2022); *Montecastro v. Newsome*, No. 1:19-cv-01065-BAM (PC), 2021 WL 1143437, at *4 (E.D. Cal. Mar. 25, 2021); *Williams v. Dirkse*, No. 1:21-cv-00047-BAM (PC), 2021 WL 1264789, at *6 (E.D. Cal. Apr. 6, 2021); *Gonzales v. Harmon*, No. 1:21-cv-00796-BAM (PC), 2021 WL 5179261, at *5 (E.D. Cal. Nov. 8, 2021); *Gray v. Khoo*, No. 1:20-cv-01047-DAD-SAB (PC), 2021 WL 38182, at *14 (E.D. Cal. Jan. 5, 2021).

The first of these cases, *Lyons*, is easily distinguishable from Mr. Avila's. The section of *Lyons* cited by the district court stands for the proposition that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lyons*, 461 U.S. at 102 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). Mr. Avila, however, alleged exactly the kind of "continuing, present adverse effects" that did not exist in *Lyons*: He contended at the time of his complaint that the defendants continued to deny him necessary medical care, resulting in severe, ongoing pain and continued blindness. ER-46.

*Valley Forge* is equally inapplicable to the present litigation. That case, which involved a First Amendment claim arising from the transfer of government property to a religious organization, describes the standing requirement in broad terms. *See Valley Forge*, 454 U.S. at 471. Insofar as it sets forth the basic requirement that a plaintiff seeking relief must allege the presence of an injury, Mr. Avila's lack of medical treatment resulting in the loss of his eyesight and ongoing pain easily meets that threshold. *Id.* And *Valley Forge* otherwise has little in common—factually or legally—with Mr. Avila's case; it includes no discernable holding that could bar Mr. Avila from seeking injunctive relief. *See id.*

38

      *ii.*      *The district court erred in prematurely conducting an NNI analysis and in concluding that the relief sought by Mr. Avila was not sufficiently narrow.*

In concluding that Mr. Avila's request for injunctive relief was improper, the district court also invoked the PLRA's NNI requirement. ER-41. Pursuant to this restriction, courts may only grant prospective relief after "find[ing]" that such relief "is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A); *Porretti v. Dzurenda*, 11 F.4th 1037, 1051 (9th Cir. 2021). The district court concluded that Mr. Avila's requested injunctive relief "*may*" not pass muster because the relief he sought was purportedly too "broad," "ambiguous," and "vague" to satisfy the NNI test. ER-41-42.

As an initial point, the district court erred in conducting the NNI analysis at the screening stage of this case. Pursuant to the PLRA, courts must undertake "screening" prior to service, whereby they determine whether a complaint "(1) is frivolous or malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see Nordstrom*, 762 F.3d at 907 n. 1; *Lopez v. Smith*, 203 F.3d 1122, 1126 (9th Cir. 2000). The statute authorizes no more and no less. *Jones v. Bock*, 549 U.S. 199, 214 (2007). Notably absent from this list is the authorization to consider whether requested prospective relief is "narrowly drawn, extends no further than

39

necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). The district court was not free to graft such authorization atop that which was enumerated by Congress. *Jones*, 549 U.S. at 214.

Nor would the authorization to conduct an NNI analysis prior to service make sense in this case. An NNI analysis of a request such as Mr. Avila's demands a comprehensive engagement with the facts, typically after the parties submit competing evidence developed through fact and expert discovery and often involving live testimony. *See Brown v. Plata*, 563 U.S. 493, 538-41 (2011); *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1063, 1073 (9th Cir. 2010). It should therefore come as no surprise that counsel has not been able to identify any Ninth Circuit decision reviewing an NNI analysis conducted at the screening stage. Instead, this Court has examined NNI analyses conducted at summary judgment, after an evidentiary hearing, and at trial. *See Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1195-96, 1207 (9th Cir. 2008); *Edmo*, 935 F.3d at 775; *Oluwa v. Gomez*, 133 F.3d 1237, 1240 (9th Cir. 1998); *Hallet v. Morgan*, 296 F.3d 732, 742 (9th Cir. 2002).

Moreover, there is good reason to conclude that, once the NNI analysis may be conducted, Mr. Avila will satisfy its demands. In his complaint, Mr. Avila simply asks for access to medical care to treat his ongoing pain and vision loss. ER-50. At

the proper stage of litigation, a court is likely to find that such relief is well within the bounds of the PLRA. *See Edmo*, 935 F.3d at 800. Indeed, such relief involves no more than the constitutional minimum standard, *see Estelle*, 429 U.S. at 103, or the standard set under CDCR regulations requiring the swift provision of specialty care. *See* Cal. Code Regs. Tit. 15, § 3999.301 (noting that even *routine* specialty care must be provided with 46-90 days).

## D. The Court Erred In Dismissing Mr. Avila's Complaint With Prejudice.

Mr. Avila was no ordinary pro se litigant. Already partially blind, experiencing significant pain, unable to walk, and struggling to tend to his basic human needs, Mr. Avila sought relief in federal court. Faced with allegations of an ongoing deprivation of critical medical care, the district court dismissed Mr. Avila's claim with prejudice after only a single opportunity to amend. That was error.

Rule 15 of the Federal Rules of Civil Procedure permits parties to amend their pleadings, subject to certain restrictions, after filing the pleading with the court. The "Supreme Court has instructed the lower federal courts to heed carefully the command of Rule 15(a) . . . by freely granting leave to amend when justice so requires." *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (internal quotations omitted). Thus, the longstanding rule within the Ninth Circuit has been to apply "Rule 15's policy of favoring amendments to pleadings . . . with 'extreme liberality,'" and "even more liberally to pro se litigants." *Id*. This rule continues to

41

apply even after a plaintiff has had one opportunity to amend. *See Lopez*, 203 F.3d at 1130-31 (explaining that a dismissal with prejudice after only granting leave to amend once was an error where an incarcerated plaintiff could have amended the complaint to cure deficiencies); *Landrath v. City of Portland*, 141 F.3d 1177 (9th Cir. 1998) (noting that a dismissal was "overly harsh" where a plaintiff had only one opportunity to amend his potentially meritorious claims); *Bourke v. City of San Diego Police Dep't*, 132 F.3d 38, 38 (9th Cir. 1997).

Against this backdrop, courts consider four factors when determining whether to grant leave to amend: "undue delay, bad faith or dilatory motive, futility of amendment, and prejudice to the opposing party." *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The prejudice factor "carries the greatest weight" as it is the "touchstone of this inquiry." *Eminence Capital, LLC. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Lone Star Ladies Inv. Club v. Schlotzksy's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001)). Indeed, "[a]bsent prejudice, or a strong showing of any of the remaining . . . factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital*, 316 F.3d at 1052; *see also Foman v. Davis*, 371 U.S. at 182).

Here, the district court erred in dismissing Mr. Avila's pro se complaint with prejudice because all four factors weighed in his favor. With respect to the weightiest factor—prejudice to the opposing party—Mr. Avila had not yet served the complaint

at the time the court dismissed his case. Mr. Felder and the unidentified medical personnel therefore had not mounted a defense and had yet to undertake any costs related to the case. Thus, granting Mr. Avila leave to amend would not have prejudiced them.

The other three factors also favor a non-prejudicial dismissal. First, there were no indications that granting leave to amend would cause undue delay, particularly given that Mr. Avila had timely filed his amended complaint, and objections to the magistrate judge's Findings and Recommendations. Second, there was also no evidence of bad faith. To the contrary, Mr. Avila endeavored in good faith to address in his amended complaint the deficiencies of his initial complaint. This is evidenced by his attempt to respond to the district court's request for additional information concerning "what happened, when it happened, or who was involved." ER-54. He did just that, explaining that after lodging complaints in 2019, by which time his vision had deteriorated considerably, he began seeing "Dr." Felder, who refused to authorize necessary medical care and prescribed medication that caused further pain and vision loss, ER-46-47.

And third, leave to amend would not have been futile. Mr. Avila's predicament is as or more troubling than those this Court has long held to violate the Eighth Amendment. *See supra* I.B.iii. In any event, that Mr. Avila's complaint would not be mistaken for one prepared by an attorney did not license the district

43

court to prematurely dismiss the case with prejudice. As this Court has long held, "[l]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988) (internal quotations omitted)). At a bare minimum, this Court should remand with instruction directing the district court to permit Mr. Avila a second chance at doing so.

## CONCLUSION

For the aforementioned reasons, this Court should reverse the district court's screening-stage dismissal and remand.

Dated: January 19, 2024        Respectfully submitted,

                */s/ Daniel M. Greenfield*
                Daniel M. Greenfield*
                Wynne Muscatine Graham
                RODERICK & SOLANGE
                 MACARTHUR JUSTICE CENTER
                501 H Street NE, Suite 275
                Washington, D.C. 20002
                (202) 869-3434
                daniel.greenfield@macarthurjustice.org
                wynnemg@macarthurjustice.org

                *Appointed Pro Bono Counsel for*
                *Plaintiff-Appellant Andrew Avila*

*This brief was prepared with the substantial assistance of UCLA School of Law Prisoners' Rights Clinic students Catherine Charleston, Joseph Gaylin, and Brisely Martinez.

44

## STATEMENT OF RELATED CASES

The undersigned attorney states the following:

I am unaware of any related cases currently pending in this Court.

Date: January 19, 2024

*s/ Daniel M. Greenfield*
Daniel M. Greenfield

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32 and 9th Circuit Rule 32, I certify that:

This brief complies with the type-volume limitation of 9th Circuit Rule 32-1(a) because this brief contains 10,364 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

*s/ Daniel M. Greenfield*
Daniel M. Greenfield

**CERTIFICATE OF SERVICE**

I hereby certify that on January 19, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*s/ Daniel M. Greenfield*
Daniel M. Greenfield