No. 22-15791

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

ANDREW AVILA,

*Plaintiff-Appellant,*

v.

MICHAEL A. FELDER, C.E.O. CHHS at Kern Valley State Prison and
CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Eastern District of California
Case No. 1:21-cv-01510
Honorable Jennifer L. Thurston

---

## APPELLANT'S REPLY BRIEF

---

Daniel M. Greenfield*
Wynne Muscatine Graham
RODERICK & SOLANGE
  MACARTHUR JUSTICE CENTER
501 H Street NE, Suite 275
Washington, D.C. 20002
(202) 869-3434
daniel.greenfield@macarthurjustice.org
wynnemg@macarthurjustice.org

*Appointed Pro Bono Counsel for
Plaintiff-Appellant Andrew Avila*

*This brief was prepared with the substantial assistance of UCLA School of Law Prisoners' Rights Clinic students Catherine Charleston, Joseph Gaylin, and Brisely Martinez.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... ii

INTRODUCTION .....................................................................................1

I. In At Least Three Ways, Mr. Avila Stated A Plausible Eighth Amendment Claim Against Mr. Felder..................................................................2

    A. Mr. Avila Made Out A Plausible Claim That Mr. Felder Violated The Eighth Amendment By Providing "Medical Care" Without Medical Training.................................................................................3

    B. Mr. Avila Made Out A Plausible Claim That Mr. Felder Violated The Eighth Amendment By Persisting In An Ineffectual Course Of Treatment With Full Knowledge Of Mr. Avila's Serious Medical Needs. ..................6

    C. Mr. Avila Made Out A Plausible Eighth Amendment Claim That Mr. Felder Refused To Authorize Care With Full Knowledge Of Mr. Avila's Pressing Medical Needs.................................................................8

II. The District Court Failed To Liberally Construe Mr. Avila's Pleadings. .......11

III. Mr. Avila Stated A Plausible Eighth Amendment Claim Against Unnamed Medical Personnel. ...........................................................................16

IV. The District Court Erred By Dismissing Mr. Avila's Complaint On The Bases That He Lacked Standing And Had Not Satisfied The Needs-Narrowness-Intrusiveness Test. ..........................................................................20

V. The District Court Abused Its Discretion In Dismissing Mr. Avila's Complaint Without Leave to Amend. ............................................................23

CONCLUSION.......................................................................................26

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akhtar v. Mesa*,
  698 F.3d 1202 (9th Cir. 2012) ...............................................................8

*Allen v. Santa Clara Cnty. Corr. Peace Officers Ass'n*,
  38 F.4th 68 (9th Cir. 2022) ....................................................................5

*Brown v. Sikes*,
  212 F.3d 1205 (11th Cir. 2000) ...........................................................16

*Brown v. Stored Value Cards, Inc.*,
  953 F.3d 567 (9th Cir. 2020) ...............................................................24

*Byrd v. Maricopa Cnty. Bd. of Supervisors*,
  845 F.3d 919 (9th Cir. 2017) .........................................................15, 17

*Cervantes v. Countrywide Home Loans, Inc.*,
  656 F.3d 1034 (9th Cir. 2011) .............................................................24

*Colwell v. Bannister*,
  763 F.3d 1060 (9th Cir. 2014) .............................................................10

*Cordero v. California Dep't of Corr. & Rehab.*,
  No. 21CV1609-LL(MSB), 2022 WL 17834069 (S.D. Cal. Dec. 20,
  2022) ....................................................................................................19

*Estelle v. Gamble*,
  429 U.S. 97 (1976)..................................................................................9

*Fasugbe v. Willms*,
  No. CV-2-10-2320-WBS, 2011 WL 2119128 (E.D. Cal. May 26,
  2011) ....................................................................................................14

*Fisher v. Kealoha*,
  869 F. Supp. 2d 1203 (D. Haw. 2012)..................................................19

*Flowers v. Ahern*,
  650 F. Supp. 2d 988 (N.D. Cal. 2009)..................................................19

*Foman v. Davis*,
  371 U.S. 178 (1962)..............................................................................23

*Gillespie v. Civiletti*,
629 F.2d 637 (9th Cir. 1980) ...............................................................18

*Haines v. Kerner*,
404 U.S. 519 (1972).............................................................................4

*Hearns v. San Bernardino Police Dep't*,
530 F.3d 1124 (9th Cir. 2008) .............................................................26

*Hoptowit v. Ray*,
682 F.2d 1237 (9th Cir. 1982) .....................................................3, 4, 6

*Jett v. Penner*,
439 F.3d 1091 (9th Cir. 2006) ...............................................................8

*Long v. Sugai*,
91 F.4th 1331 (9th Cir. 2024) .......................................................22, 26

*Matthews v. Nat'l Football League Mgmt. Council*,
688 F.3d 1107 (9th Cir. 2012) ...............................................................6

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) ...............................................................22

*Myers v. Paramo*,
No. 18CV2239-DMS(BLM), 2019 WL 1982218 (S.D. Cal. May 3,
2019) ...................................................................................................21

*Nordstrom v. Ryan*,
762 F.3d 903 (9th Cir. 2014) .................................................15, 24, 26

*Porretti v. Dzurenda*,
11 F.4th 1037 (9th Cir. 2021) ..............................................................22

*Price v. Kramer*,
200 F.3d 1237 (9th Cir. 2000) .............................................................26

*Schneidereit v. Tr. of the Scott & Brian, Inc.*,
No. CV-11-06919-JVS, 2012 WL 12884908 (C.D. Cal. Apr. 27,
2012) ...................................................................................................13

*Sharkey v. O'Neal*,
778 F.3d 767 (9th Cir. 2015) .................................................23, 25, 26

iii

*Skinner v. Switzer*,
562 U.S. 521 (2011)..................................................................................4

*Stewart v. Aranas*,
32 F.4th 1192 (9th Cir. 2022) ...................................................................7

*Stoyas v. Toshiba Corp.*,
896 F.3d 933 (9th Cir. 2018) .............................................................23, 25

*Toussaint v. McCarthy*,
801 F.2d 1080 (9th Cir. 1986) .............................................................3, 6

*United States v. Webb*,
655 F.2d 977 (9th Cir. 1981) ............................................................23, 24

*Wakefield v. Thompson*,
177 F.3d 1160 (9th Cir. 1999) ...........................................................18, 19

*Wilhelm v. Rotman*,
680 F.3d 1113 (9th Cir. 2012) ...................................................................2

*Yee v. City of Escondido*,
503 U.S. 519 (1992)...................................................................................5

*Youngblood v. 5 Unknown Cim Corr. Officers*,
536 F. App'x 758 (9th Cir. 2013) ...........................................................19

*Zepeda v. INS*,
753 F.2d 719 (9th Cir. 1983) ...................................................................21

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ...................................................................25

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) ...................................................17

Fed. R. Civ. P. 56(a)..................................................................................21

Fed. R. Civ. P. 56(b) .................................................................................21

Fed. R. Civ. P. 65(a)..................................................................................21

iv

**INTRODUCTION**

For approximately three years, Mr. Avila suffered from severe eye pain while he went blind in one eye. He repeatedly alerted defendants to his worsening condition, and they repeatedly denied him the care he needed. One of the defendants, Michael Felder, even assumed the role of "doctor" despite lacking medical qualifications. These are textbook Eighth Amendment violations.

Mr. Avila filed suit and amended his complaint once—*pro se* and while suffering debilitating pain and vision loss. The district court erroneously dismissed Mr. Avila's amended complaint at the screening stage without granting leave to amend. In so doing, it failed to liberally construe the complaint and consistently misapplied the law. Unsurprisingly, the government's amicus brief hardly defends the district court's reasoning.

Instead, the government grasps at a new set of factually and legally erroneous arguments. Failing to construe properly Mr. Avila's *pro se* pleadings, the government alleges that Mr. Avila's allegations below were "inconsistent," AB-18-20; that his allegations on appeal are "new," AB-16; and that he did not allege the elements of his Eighth Amendment claim, AB-14, AB-17. On all fronts, the record shows just the opposite. The government further contends that Mr. Avila "made no reference to other unnamed medical defendants" in his complaints. AB-23. Dead wrong: he references them *dozens* of times.

1

These factual errors are compounded by a slew of legal ones. First, the government persistently applies legal standards not relevant to this stage of litigation. It contends that Mr. Avila was required to develop precise legal theories despite being at the screening stage, *see* AB-16, and it prematurely analyzes the merits of a preliminary injunction claim, *see* AB-24-25. It then mistakenly contends that although Mr. Avila has amended his complaint just once, the district court had "broad discretion" to deny further amendment without conducting the requisite analysis. AB-26. Finally, the government takes the unsupported positions that a non-medically-trained provider's opinion should be considered "a medical opinion" under the law, AB-15-17, and that Mr. Avila was required to use the word "Doe" to describe those defendants Mr. Avila told the court he could not identify without discovery, AB-23. None of this is true.

This Court should therefore reject the government's contentions along with the district court's. In so doing, it should reverse the district court's dismissal, or at a minimum grant Mr. Avila leave to amend.

## I. In At Least Three Ways, Mr. Avila Stated A Plausible Eighth Amendment Claim Against Mr. Felder.

To pass the screening stage, a complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This is a "low threshold," *id.* at 1123, which Mr. Avila's

*pro se* complaint easily satisfies. In fact, it states at least three plausible Eighth Amendment claims. First, Mr. Felder provided medical care even though he lacked *any* qualifications to do so. Second, playing the part of a qualified provider, Mr. Felder persisted with ineffectual treatment even in the face of its obvious failure. And third, Mr. Felder refused to authorize necessary emergency medical care even though it was obvious that Mr. Avila needed it.

The government largely ignores these arguments. Where it does respond, it repeatedly mischaracterizes the record and misstates the law.

**A.** **Mr. Avila Made Out A Plausible Claim That Mr. Felder Violated The Eighth Amendment By Providing "Medical Care" Without Medical Training.**

Mr. Avila's complaint explains how Mr. Felder—a prison administrator without medical training—assumed the role of a treating physician, prescribed medication for Mr. Avila's serious eye condition, and closed the door on surgery and other emergent care until it was too late to avert catastrophe. ER-77-78; ER-46-47; *see also* ER-20, ER-32. This is a clear example of deliberate indifference in violation of the Eighth Amendment. *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *Toussaint v. McCarthy*, 801 F.2d 1080, 1111-12 (9th Cir. 1986), *overruled in part on other grounds by Sandin*, 515 U.S. 472. Indeed, the Constitution's promise of "adequate medical care" for prisoners has "no meaning" if those providing such "care" are not

3

actually "competent to examine prisoners and diagnose illnesses." *Hoptowit*, 682 F.2d at 1253.

The government does not engage at all with the merits of this argument. Instead, it hangs its hat on the factually and legally erroneous contention that Mr. Avila's argument is "an entirely new theory of liability" and thus not cognizable on appeal.[1] AB-16.

As a matter of federal civil procedure, this is wrong. Rule 8 "generally requires only a plausible short and plain statement of the plaintiff's claim." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (internal quotations omitted). It does not require an "exposition of [a plaintiff's] legal argument," nor must a plaintiff "pin [his] claim for relief to a precise legal theory." *Id.* In recognition of this rule, the form complaint Mr. Avila used (and which the prison presumably provided) instructed him "not [to] give any legal arguments" and to state the facts "as briefly as possible." ER-70. The government is thus wrong to contend that any complaint—let alone one which must be held to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519 (1972)—was required to commit to a precise "theory of liability," AB-16.

---

[1] AB and OB refer respectively to the government's amicus brief and Mr. Avila's opening brief.

Having complied with Rule 8, Mr. Avila is entitled to "make any argument in support of [his] claim on appeal." *Allen v. Santa Clara Cnty. Corr. Peace Officers Ass'n*, 38 F.4th 68, 71 (9th Cir. 2022); *see also Yee v. City of Escondido*, 503 U.S. 519, 534 (1992) ("Having raised a taking claim … [the] petitioners could have formulated any argument they liked in support of that claim" on appeal.). That is, he is permitted to make a "new" argument on appeal as long as that argument supports the Eighth Amendment claims set forth in his complaint.

But even if he were not allowed to make a "new" argument of this sort (which he is), his arguments on appeal are not "new" or "premised on [the] judicially noticed fact" that Mr. Felder provided unlicensed medical care, as the government contends. AB-16. From the get-go, Mr. Avila identified Mr. Felder as a "chief executive officer" with "MS" and "MBA" credentials, described Mr. Felder's knowledge of his medical conditions including "severe pain …; chronic endopht[ha]lm[it]is; retinal detachment; [and] a retinal tear," and sued him for "malpractice" in light of the "permanent suffering" wrought by "los[ing] [his] vision [in his] (R) eye." ER-70, ER-73 (original complaint). In the amended complaint, Mr. Avila identified Mr. Felder as "C.E.O." but described "face to face" appointments with Mr. Felder, during which Mr. Felder "personally" listened to Mr. Avila's complaints of pain and vision loss, "read [Mr. Avila's] chart," "prescribe[d] medication," and "refused" to authorize emergency care. ER 45-47. Taken together, this information more than

5

plausibly demonstrates an intent to sue a prison administrator for his decision to dispense "medical care." And because all this information was contained in the body of Mr. Avila's pleadings, the assertion that Mr. Avila's arguments on appeal are premised solely on a judicially noticed fact is simply incorrect.[2]

Mr. Avila's arguments on appeal are neither unreviewable as a matter of law nor new as a matter of fact. Erroneous procedural arguments aside, the government's response is also remarkable for the fact that it does not engage with the substance of the argument that a prison administrator was moonlighting as a physician—conduct that unsurprisingly resulted in catastrophe and is the very essence of deliberate indifference. *See Hoptowit*, 682 F.2d at 1253; *Toussaint*, 801 F.2d at 1111-12.

**B.      Mr. Avila Made Out A Plausible Claim That Mr. Felder Violated The Eighth Amendment By Persisting In An Ineffectual Course Of Treatment With Full Knowledge Of Mr. Avila's Serious Medical Needs.**

After Mr. Avila's eyesight continued to decline and his pain intensified, it became clear that Mr. Felder's treatment plan was ineffective. Rather than authorize surgery, Mr. Felder persisted with the same course of treatment: he approved further "monitor[ing]" and prescribed medication that, as Mr. Avila explained, made his

---

[2] The government sensibly does not object to Mr. Avila's proper request that this Court take judicial notice of Mr. Felder's licensure. *See* AB-16. Nor could the government lodge any such objection given its admission that "[Mr.] Felder is not a doctor." *Id.* at n.2; *see Matthews v. Nat'l Football League Mgmt. Council*, 688 F.3d 1107, 1113 & n.5 (9th Cir. 2012) (courts may take judicial notice of undisputed matters of public record).

eyesight and pain even worse. ER-46-47; ER-77-78. Mr. Felder's decision to stay the course "in the face of [its] obvious failure" constitutes deliberate indifference. *Stewart v. Aranas*, 32 F.4th 1192, 1194 (9th Cir. 2022).

The government—dedicating just two sentences to Mr. Felder's persistent, ineffectual treatment—asserts that "there are no allegations that [Mr.] Felder had any knowledge about Mr. Avila's allergic reaction" or any other "serious medical need." AB-17-18. Wrong. Mr. Avila alleged that he saw "Michael Felder personally, face to face" at which point he told Mr. Felder that his "eye hurts really bad," that his "head hurts behind [his] eye" and that his eyesight had deteriorated to the point that he could not "see where [he was] walking" or tend to his personal hygiene. ER-46. Mr. Avila alleged that he told Mr. Felder that he should be taken to the "hospital right away." ER-47. In response, Mr. Felder "read [his] chart" and "did nothing but prescribe medication that caused an allergic reaction." ER-47. Moreover, Mr. Avila alleged, he continued to see Mr. Felder as his eye steadily deteriorated. ER-47.

Mr. Avila's "grievance package," which Mr. Felder acknowledged "review[ing]," ER-77, corroborates these allegations. Therein, Mr. Avila pleaded for help because "his sight [was] gone and the pain [was] severe in his right eye." ER-82. Mr. Avila noted that medical personnel were "making it worse not better." ER-81. Mr. Felder catalogued Mr. Avila's diagnoses. ER-77-78. And Mr. Felder himself

acknowledged that surgery was called for—indeed, that it would be the "only effective treatment" for one of Mr. Avila's conditions. ER-78.

The government characterizes all of this as "vague" and "conclusory." AB-18. It is anything but. An incarcerated, partially blind litigant pled facts establishing that he informed Mr. Felder of his deteriorating eyesight and intense pain. The grievance package corroborates those allegations, showing that Mr. Felder, based on his personal review of Mr. Avila's records, was aware of Mr. Avila's pain, suffering, and deteriorating vision. At the screening stage, no more was required to show that Mr. Felder stuck with an ineffectual course of treatment when something different was plainly called for. *See Akhtar v. Mesa*, 698 F.3d 1202, 1208-09 (9th Cir. 2012) (noting that liberal construction is particularly necessary where a *pro se* plaintiff faces additional barriers to filing suit).

### C. Mr. Avila Made Out A Plausible Eighth Amendment Claim That Mr. Felder Refused To Authorize Care With Full Knowledge Of Mr. Avila's Pressing Medical Needs.

Despite Mr. Felder's knowledge of Mr. Avila's serious medical needs, *see, e.g.*, ER-46-47; ER-76-78; ER-81-82, Mr. Felder refused to timely authorize surgery and other necessary care, ER-77-78. Such a "delay[]" and "den[ial]" of "medical treatment" is quintessential deliberate indifference. *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991)).

8

The government does not—and could not—deny that deliberate indifference manifests where a prison official intentionally delays or denies medical care. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Instead, it argues that Mr. Felder did nothing wrong because he could not have known "that an 'emergency outpatient order' was needed sooner." AB-14. Not so. In several face-to-face meetings, Mr. Avila made clear that he was in extreme pain and rapidly losing his eyesight. ER-46-47. At this point, Mr. Avila informed Mr. Felder that, in precisely these circumstances, prison policy obligated him to "send [him] to [the] hospital right away." ER-47. And yet, Mr. Felder did not authorize the emergency outpatient care "right away." Or even soon thereafter. Instead, he waited a *year*, during which time Mr. Avila's eyesight deteriorated and his pain steadily worsened. ER-47.

The government also argues that Mr. Felder's refusal to authorize care was no more than a "difference of medical opinion." AB-13-15. But Mr. Felder, a prison administrator, is not entitled to a "medical opinion." That's why the Supreme Court has distinguished between deliberate indifference manifested "by prison doctors in their response to [a] prisoner's needs" and deliberate indifference manifested by "prison guards in intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104-05. Where, as here, a prison official denies access to care based on his own guesswork, the refusal to authorize care is not a difference in medical opinion. It is a decision to deny or delay care.

9

But even if this were a case about a difference of medical opinion, a course of treatment that is "unacceptable under the circumstances" would still run afoul of the Eighth Amendment. *Colwell v. Bannister*, 763 F.3d 1060, 1068-69 (9th Cir. 2014). And Mr. Felder's "medical care" would not be acceptable under any circumstances. To recap, Mr. Felder refused to authorize surgery or other emergency care after Mr. Avila communicated that he was experiencing intense pain and rapidly deteriorating vision, ER-46-47; after medical professionals diagnosed Mr. Avila with a host of serious eye complications, ER-35, at least one of which could result in "complete blindness" if not operated upon, ER-22-25; and after *Mr. Felder* personally acknowledged that surgery was the "only effective treatment" for at least one of Mr. Avila's conditions, ER-78. Presented with that information, Mr. Felder chose an indefensible option: doing nothing. This Court has described far less egregious failures as "the very definition of deliberate indifference." *Colwell*, 763 F.3d at 1068-69. Indeed it is.[3]

---

[3] The government also claims that because Mr. Avila received some medical care prior to Mr. Felder's intervention, his "request for emergency treatment [from Mr. Felder] merely confirmed his disagreement with the treatment he did receive." AB-15. This makes no sense. The fact that Mr. Avila had previously received inadequate care from other personnel, ER-77-78; OB-31-33, has no bearing on the question of whether Mr. Felder's subsequent *year-long* refusal to authorize necessary care while Mr. Avila went partially blind could plausibly violate the Eighth Amendment, *see Colwell*, 763 F.3d at 1068-69.

**II.    The District Court Failed To Liberally Construe Mr. Avila's Pleadings.**

Mr. Avila's story is consistent and plausible. He underwent routine cataract surgery and thereafter was diagnosed with several serious ocular complications. ER-81; ER-21-22. As his pain and vision continued to deteriorate, more complications arose—several of which required surgical follow up. ER-22-25; ER-78. After medical personnel provided some inadequate care, ER-77-78, Mr. Felder—a prison administrator with no medical license—intervened. Acting *like a doctor* even though he was not one, Mr. Felder dispensed unauthorized medical care. ER-46-47. He also indefensibly delayed access to surgery and other emergent care despite knowing that both were necessary. ER-24; ER-20-22. As Mr. Avila went blind in one eye, he experienced "severe" "ongoing pain." ER-70; ER-82.

The government argues that the district court was compelled to screen out this case because "glaring inconsistencies" concerning Mr. Felder's role rendered Mr. Avila's claims "[im]plausible." AB-18-20. It further contends that those inconsistencies are evidence of "duplicity" on Mr. Avila's part. AB-16. But none of the three purported inconsistencies alleged by the government exist. First, the government complains that Mr. Avila described Mr. Felder as a "Chief Executive Officer" in the initial complaint but as a "doctor" in the amended complaint. AB-19-20. The government misstates the record. In the amended complaint, Mr. Avila describes Mr. Felder variously as a "C.E.O," ER-45, a doctor, ER-46, and a "C.E.O

11

– doctor," ER-49. In both complaints Mr. Avila alleges that Mr. Felder was a "C.E.O." who provided woefully inadequate medical care. ER-45-47; ER-69-70, 73. And in objecting to the order of dismissal, Mr. Avila described Mr. Felder as "C.E.O/Dr. Michael M. Felder" and noted that he "personally seen me face to face" and "provided several medications." ER-20. Far from an inconsistency, both complaints, when liberally construed, allege that Mr. Felder was a prison administrator who unconstitutionally *played doctor* by providing Mr. Avila with medical care without the authorization to do so.[4]

Second, the government argues that Mr. Avila initially pled that Mr. Felder had "documentary evidence" of Mr. Avila's medical conditions and "responded to [Mr.] Avila's healthcare grievance at the institutional level," whereas his amended complaint alleged that Mr. Felder was "personally" involved with his treatment. AB-19-20. This is not an inconsistency: reviewing medical records and responding to a healthcare grievance may be done while *also* "personally" dispensing medical

---

[4] Insofar as the government argues that Mr. Felder's lack of medical training is "inconsistent" with his providing medical care, AB-16, there is nothing "inconsistent" about someone being unlicensed while providing care anyway. There is, however, something *unconstitutional* about it! That is precisely Mr. Avila's point: Mr. Felder's decision to provide care while unlicensed constitutes deliberate indifference. What the government erroneously deems "inconsistent" is instead a tacit acknowledgment that Mr. Felder's conduct was unlawful.

treatment. Indeed, Mr. Avila alleges that Mr. Felder did *all* of these things. ER-47; ER-20.

The government imagines one more inconsistency. AB-20. This one, too, is pure fancy. It notes that a grievance response attached to Mr. Avila's initial complaint indicates that Mr. Felder did "*not* meet with" Mr. Avila during a specific twelve-day period, ER-77-78, whereas the amended complaint alleges that Mr. Avila and Mr. Felder met "face-to-face" on multiple occasions, ER-46-47. Suggesting that there is an inconsistency here is, of course, nonsensical. Mr. Felder might not have met with Mr. Avila during one specific period while meeting with him other times. And that is precisely what the record shows—Mr. Felder swooped in *after* trained providers delivered some inadequate care over a twelve-day period. ER-47; ER-20; ER-32.

The cases the government relies upon—all unpublished district court orders—to support its allegations of inconsistency are wholly inapposite. In *Schneidereit*, the plaintiffs made an explicit admission of loan default in the original complaint, the first amended complaint, and the second amended complaint, only to reverse course and claim the polar opposite—*i.e.*, that they had *not* defaulted on the loan—in the third amended complaint. *See Schneidereit v. Tr. of the Scott & Brian, Inc.*, No. CV-11-06919-JVS, 2012 WL 12884908, \*1 & n.5 (C.D. Cal. Apr. 27, 2012), *aff'd sub nom. Schneidereit v. Tr. of Scott & Brian, Inc.,* 693 F. App'x 733 (9th Cir. 2017).

13

Here, by contrast, Mr. Avila never cast doubt on—let alone completely reneged on—any of the allegations in his initial complaint.

*Fasugbe* is also inapplicable. There, a screenshot of a webpage included in the original complaint appeared to have been materially modified before it was included in the amended complaint. *Fasugbe v. Willms*, No. CV-2-10-2320-WBS, 2011 WL 2119128, *6 (E.D. Cal. May 26, 2011). This discrepancy led the court to doubt the accuracy of the screenshots. *Id*. The government does not—and could not—make any similar allegation of record falsification in the present case.

As a last-ditch effort to argue that Mr. Avila made "inconsistent" statements, the government cites to a case noting that a "context-specific" inquiry as to prior allegations is critical for a court to determine the plausibility of a stated claim. *See* AB-21 (citing *Cole v. Sunnyvale*, No. C-08-05017 RMW, 2010 WL 532428, at *4 (N.D. Cal. Feb. 9, 2010)). But despite citing this case, the government fails to acknowledge the context surrounding Mr. Avila's pleadings. Such context is critical. Mr. Avila was an incarcerated, *pro se* litigant experiencing severe eye pain and vision loss while attempting his best to cure the purported deficiencies in his original complaint as directed by the district court. ER-54-55. He provided the court with additional information that only bolstered his case.[5]

---

[5] The district court also erroneously concluded that the initial and amended complaints were "inconsistent," albeit for a different reason than the one claimed by

In any case, even if the purported inconsistencies alleged by the government were, in fact, inconsistencies (which, for the reasons just explained, they are not), they each turn, impermissibly, on inferences drawn in the government's favor. *See Nordstrom v. Ryan*, 762 F.3d 903, 906 (9th Cir. 2014) (a court must "draw all reasonable inferences in the plaintiff's favor"). First, the government asks this Court to take a partially blind *pro se* litigant's reference to Mr. Felder as a "doctor" and infer from this one word that Mr. Avila meant to allege only that Mr. Felder was a trained medical professional whose care was deficient in light of that training. Then, because Mr. Felder had "documentary evidence" of Mr. Avila's medical conditions, the government asks this Court to make the inference that Mr. Felder's *only* involvement in Mr. Avila's "treatment" was his response to Mr. Avila's healthcare grievance and therefore, that he never met with Mr. Avila. Finally, Mr. Felder's grievance response noting that he did not conduct an interview of Mr. Avila during one specific period of time means, according to the government, that Mr. Felder did not personally meet with Mr. Avila thereafter. But making these inferences in the government's favor would be a plain error of law. *Byrd v. Maricopa Cnty. Bd. of Supervisors*, 845 F.3d 919, 922 (9th Cir. 2017) (holding that in its review, a court

---

the government. The district court noted that documents attached to the original complaint showed that Mr. Avila received some care and thus undermined Mr. Avila's claim that Mr. Felder exhibited deliberate indifference. ER-40; *see* OB-29. Tellingly, the government refuses to defend the district court's flawed reasoning.

must "constru[e] the pro se complaint liberally and tak[e] all the allegations of material fact as true and in the light most favorable to" the plaintiff).

### III. Mr. Avila Stated A Plausible Eighth Amendment Claim Against Unnamed Medical Personnel.

On appeal, Mr. Avila explained that his complaint, when liberally construed, also raises a deliberate indifference claim against presently unidentified medical personnel. OB-30-34; *see also* OB-10-14. Without discovery, Mr. Avila was unable to learn the identity of this additional staff, a common difficulty at the screening stage, particularly in prison cases litigated *pro se*. *See Brown v. Sikes*, 212 F.3d 1205, 1209 & n. 4 (11th Cir. 2000) (citing cases and explaining that "[a]ppellate courts have acknowledged the difficulties faced by a prisoner in identifying alleged wrongdoers before filing a complaint and have directed district courts to assist prisoners in discovering the identity of the proper defendants."). As Mr. Avila put it, "you can't sue someone you don't know." ER-20. The government has two responses, neither satisfactory.

First, the government asserts that Mr. Avila "made no reference to other unnamed medical defendants in his complaints." AB-23. Not so. Mr. Avila referenced them *dozens* of times across two complaints. Start with his original complaint. Where instructed to list defendants, Mr. Avila wrote "Michael A. Felder," "California Correctional Health Care Services," and "ETAL". ER-69. Where instructed to briefly state his claim, Mr. Avila noted that "CCHS h[e]irs; executives,

16

and administ[rato]rs failed to respond to emergency hippocratic[] oaths."[6] ER-70.

As relief, Mr. Avila sought an order directing "CCHS, ETAL not to delay emergency

exp[]edited procedures." ER-70. When verifying his complaint, he swore that "the

*defendants*, h[e]irs, administ[rato]rs, and execu[tives], exercised negl[i]gence,

malpractice . . . by denying emergency medical attention causing irreparable harm

and permanent suffering I lost my vision (R) eye." ER-73 (emphasis supplied,

quotations omitted).

Turn to his amended complaint. Where instructed to list defendants, Mr. Avila

wrote "Felder, et al." ER-44. Elsewhere, Mr. Avila described "*defendants*" as both

Mr. Felder and CCHS. ER-47 (emphasis supplied). For relief, he sought one order

directing "*defendants* not to deny emergency medical attention" and another

prohibiting "*defendants*" from denying "medical access" and retaliating against

him.[7] ER-50 (emphasis supplied). The medical grievances attached to Mr. Avila's

---

[6] In his objection to the report and recommendation, Mr. Avila made clear that it was these very CCHS employees that Mr. Avila was unable to identify without discovery. ER-19-20.

[7] The government asserts that Mr. Avila "unequivocally left blank" in the amended complaint the spaces provided for additional defendants. AB-23; ER-45-46. But that's not correct. In the spaces the government refers to, Mr. Avila wrote "N/A," which means "not available," among other things, *N.A.*, Black's Law Dictionary (11th ed. 2019), a fitting description for information not available to a prisoner without discovery. To the extent the government chooses to argue that "N/A" means "not allowed" or "not applicable," as it is also sometimes defined, *id.*, it would be improper to draw any such inference against Mr. Avila at the screening stage, *Byrd*, 845 F.3d at 922.

original complaint, which Mr. Avila, untrained in the law, quite reasonably thought constituted a portion of his amended complaint, ER-32, told a similar story. Therein, Mr. Avila complained that "everything medical *doctors* do is making it worse," ER-81 (emphasis supplied); that he had "*been telling* medical *staff* of the ongoing pain" without results, ER-82 (emphasis supplied); and that his pain had "become worse" ever "since *they* stuck a n[ee]dle in my eye," ER-82 (emphasis supplied).

As if that were not enough, Mr. Avila referenced unnamed medical defendants repeatedly in his objection to the report and recommendation. He listed the defendants as "Felder, et al," ER-19, describes treatment at the hands of an "unknown" nurse, ER-20, and explains that without discovery he was unable to identify those "unknown RN's who are CCHS/CDCR employees" that acted "in concert" with Mr. Felder,[8] ER-20.

Second, the government argues that Mr. Avila's failure to use the term "Doe" is outcome determinative. AB-23. But it only gets there by misinterpreting two cases that favor Mr. Avila—*Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir. 1980), and *Wakefield v. Thompson*, 177 F.3d 1160 (9th Cir. 1999). *See* AB-23. In both cases, this Court held that "where the identity of the alleged defendant[ ][is] not [ ] known

---

[8] It's true, as the government notes, AB-7, 23 n.4, and Mr. Avila concedes, OB-11, that CCHS as an entity is not a proper defendant. It's also irrelevant to the question of whether Mr. Avila attempted to sue other medical staff employed by or under contract to CCHS. Plainly he did as the aforementioned makes clear.

18

prior to the filing of a complaint[,] the plaintiff should be given an opportunity through discovery to identify the unknown defendants." *Wakefield*, 177 F.3d at 1163 (quoting *Gillespie,* 629 F.2d at 642) (modifications in the original); *see also Youngblood v. 5 Unknown Cim Corr. Officers*, 536 F. App'x 758 (9th Cir. 2013) (similar); *Cordero v. California Dep't of Corr. & Rehab.*, No. 21CV1609-LL(MSB), 2022 WL 17834069, at *4 (S.D. Cal. Dec. 20, 2022) (similar)*; Fisher v. Kealoha*, 869 F. Supp. 2d 1203, 1213 (D. Haw. 2012) (similar); *Flowers v. Ahern*, 650 F. Supp. 2d 988, 993 (N.D. Cal. 2009) (similar).

The government instead focuses on the inconsequential detail that the plaintiffs in both *Gillespie* and *Wakefield* apparently knew to use the word "Doe" to reference a yet-to-be-identified defendant. AB-23. Mr. Avila did not. He relied on "et al" (or "ETAL") and the substance of his allegations to put the court—and anyone who might later be served—on notice that Mr. Felder was not the sole defendant. Neither *Gillespie* nor *Wakefield* even suggest that incanting a single, magic word matters.

Mr. Avila, like the plaintiffs in *Gillespie* and *Wakefield*, should be permitted an opportunity to discover the identity of those who acted "in concert" with Mr. Felder, ER-20, to catastrophic effect.[9]

---

[9] The government does not rebut or even consider the merits of Mr. Avila's Eighth Amendment claim against unidentified medical personnel. In one half of one

**IV.    The District Court Erred By Dismissing Mr. Avila's Complaint On The Bases That He Lacked Standing And Had Not Satisfied The Needs-Narrowness-Intrusiveness Test.**

In addition to damages, Mr. Avila sought a permanent injunction, a preliminary injunction, a temporary restraining order, and declaratory relief. ER-50. The district court erroneously concluded that Mr. Avila's request for prospective relief was improper. OB-36-41. First, reasoning that Mr. Avila had shown at most the "possibility of an injury," it concluded that Mr. Avila lacked standing to seek an injunction. ER-41-42. Second, reasoning that Mr. Avila's request for "emergency medical attention" and an order "prevent[ing] Defendants' denial of medical access," ER-50, was "ambiguous," "vague," and not "narrowly tailored," the district court determined that Mr. Avila had failed the "need-narrowness-intrusiveness" (NNI) test, ER-41-42. Both of these conclusions are wrong.

To recap, Mr. Avila alleged defendants persistently refused to remedy an ongoing medical catastrophe, which is precisely the kind of present and "continuing" injury that creates standing to claim injunctive relief. OB-37-38 (quoting *City of Los*

---

sentence, it implies that, unlike the plaintiffs in *Gillespie* and *Wakefield*, Mr. Avila did not "sufficiently ple[a]d supporting facts" to establish the unnamed personnel's misconduct. AB-23. But any such argument would be a non-starter as Mr. Avila has done more than enough at this early stage to state a plausible Eighth Amendment claim against unidentified medical providers. *See* OB-30-34.

*Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Moreover, the district court jumped the gun in conducting an NNI analysis at the screening stage.[10] OB-39-41.

The government does not meaningfully engage with the district court's order or Mr. Avila's arguments. Rather, it defends the decision below on the alternative basis that the *Winter* factors—used to determine the propriety of a preliminary injunction—purportedly indicate that Mr. Avila's amended complaint did not "entitle[] him to preliminary [injunctive] relief." AB-24-25 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The government misses the mark. It would be premature to consider the *Winter* factors where, as here, no defendant has been served, and the district court is thus without jurisdiction to grant or deny a preliminary injunction. *See Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983). Mr. Avila also had yet to file a motion for a preliminary injunction, a predicate to the court's granting (or denying) one. *See* Fed. R. Civ. P. 56(a)-(b); *see also*, *e.g.*, *Myers v. Paramo*, No. 18CV2239-DMS(BLM), 2019 WL 1982218, at *4 (S.D. Cal. May 3, 2019) ("In order to obtain a preliminary injunction or temporary restraining order, a plaintiff is required to file a motion pursuant to Federal Rule of Civil Procedure 65(a) or (b).")

---

[10] At the appropriate stage of litigation, Mr. Avila is very likely to satisfy the NNI standard. OB-39-41.

Instead, the relevant question at the screening stage was whether the district court could "conceive of facts that would justify injunctive relief." *Long v. Sugai*, 91 F.4th 1331, 1336 (9th Cir. 2024) (internal quotation marks omitted); *see* OB-39-41. Here, it was easy to conceive of such facts considering that Mr. Avila's allegations of vision loss were coupled with a request for medical care necessary to prevent additional harm. Whether Mr. Avila will ultimately pass the *Winter* test is a question for another day.[11]

---

[11] When that day comes, the *Winter* analysis is likely to overwhelmingly favor a preliminary injunction. First, Mr. Avila is likely to succeed on the merits—even without discovery, Mr. Avila has stated a classic Eighth Amendment claim. Second, Mr. Avila is likely to suffer irreparable harm absent an order to provide him with necessary medical care. Third, where, as here, the risk of irreparable harm is severe, but the burden of ameliorating it insignificant—in this case, medical care prison officials are already obligated to provide—the balance of the equities tips strongly in favor of a preliminary injunction. *See Porretti v. Dzurenda,* 11 F.4th 1037, 1050-51 (9th Cir. 2021). Fourth, the public interest also weighs in favor of a preliminary injunction because Mr. Avila merely seeks medical care consistent with the constitutional minimum established by the Eighth Amendment and "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *see also, e.g.*, *Porretti*, 11 F.4th at 1050 ("The public has an interest in ensuring the continued dignity of individuals incarcerated in federal prisons and inherent in that dignity is the recognition of serious medical needs, and their adequate and effective treatment pursuant to the Eighth Amendment's mandated standard of care." (cleaned up)).

**V.    The District Court Abused Its Discretion In Dismissing Mr. Avila's Complaint Without Leave to Amend.[12]**

The district court denied Mr. Avila a second chance to amend his complaint without analyzing any of the factors that, under *Foman v. Davis*, courts are required to assess when determining whether to grant leave to amend. *See* 371 U.S. 178, 182 (1962)). That was an abuse of discretion. *See Stoyas v. Toshiba Corp.*, 896 F.3d 933, 939 (9th Cir. 2018) (emphasizing the importance of the *Foman* analysis); *Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (similar).

That fundamental error aside, consideration of the *Foman* factors leave no doubt that the district court erred in denying Mr. Avila leave to amend. Indeed, all four factors—"undue delay, bad faith or dilatory motive, futility of amendment, and prejudice to the opposing party," *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981) (citing *Foman*, 371 U.S. at 182)—counsel in favor of granting leave to amend. First, with respect to the most important *Foman* factor—which the government

---

[12] The government asserts that Mr. Avila's argument that the district court erred in denying leave to amend is separate from dismissing the complaint with prejudice. *See* AB-27 ("The heading of [Mr.] Avila's argument challenges the dismissal of the complaint 'with prejudice,' but the analysis and case law cited by Avila pertain to the court's dismissal of the complaint without leave to amend."). However, the court's error is one and the same. *See Stoyas v. Toshiba Corp.*, 896 F.3d 933, 939 (9th Cir. 2018) (collectively analyzing the district court's "[d]ismisal with prejudice and without leave to amend"). When faced with a plausible claim, the district court dismissed the complaint with prejudice when, instead, it should have granted a second opportunity to amend.

wholly ignores, *see* AB-27-29—defendants would not have been prejudiced by further amendment: they had yet to be served.[13] As to the other factors, there were no indications that leave to amend would cause undue delay or that Mr. Avila was acting in bad faith. OB-43. Nor would leave to amend be futile given the harms he has suffered and his need for recourse.

Insofar as the government means to suggest that amendment would have been futile because Mr. Avila failed to state a claim, *see* AB-26-27, it is wrong. Mr. Avila did state a claim. *See supra* at 2-10. And even if he didn't, he is entitled to amend unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Nordstrom*, 762 F.3d at 908 (cleaned up); *cf. Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1038 (9th Cir. 2011) (affirming the district court's denial of leave to amend where "although the plaintiffs contend that they can state a claim for wrongful foreclosure, Arizona state law does not currently recognize this cause of action"). Mr. Avila has not repeatedly failed to cure deficiencies, having been granted leave to amend only once. ER-59.

---

[13] The government claims that Mr. Avila omitted a *Foman* factor from the opening brief—apparently, "repeated failure to cure deficiencies by amendments previously allowed." AB-28. To start, Ninth Circuit precedent has sometimes identified only four considerations and, at other times, five. *Compare Webb*, 655 F.2d at 980, *with Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020). More to the point, the government's quibble is irrelevant where, as here, Mr. Avila had a single opportunity to cure.

The government responds by arguing that the *Foman* factors are mere considerations, AB-27-28, but the Ninth Circuit has repeatedly held otherwise, *see Stoyas*, 896 F.3d at 939; *Sharkey*, 778 F.3d at 774. Further, the government erroneously contends, citing *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009), that "[t]he district court's discretion to deny leave to amend is particularly broad where a plaintiff has previously amended the complaint." AB-26. But in *Zucco*, the *counseled* plaintiffs failed to cure deficiencies in *multiple* amended complaints, 552 F.3d at 988-89, thus making "clear that the plaintiffs made their best case" and "ha[d] no additional facts to plead," *id.* at 1007 (internal quotations omitted). The present case could not be more different. Mr. Avila, a *pro se* plaintiff filing from prison—who was partially blind and suffering severe pain no less—was only given *one* opportunity to amend. Moreover, he made clear in his objection to the R&R that any purported failure to allege "additional facts" was due to his belief that the documents he attached to his complaints were a part of his pleadings, *not* due to the absence of supplementary factual allegations. *See* ER-32. Put simply, this is not a case where the district court could find that Mr. Avila had already put forth his best case and had "no additional facts to plead." *Zucco*, 552 F.3d at 1007 (internal quotations omitted).

Thus, rather than exercise "particularly broad discretion," AB-29, to deny leave to amend, the district court was required under the circumstances to adhere to

"Rule 15's policy of favoring amendments to pleadings ... with 'extreme liberality,'" *Price v. Kramer*, 200 F.3d 1237, 1250 (9th Cir. 2000) (internal quotation marks omitted). As this Court has explained, dismissal with prejudice is a particularly harsh remedy, and a court "should first consider less drastic alternatives." *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1132 (9th Cir. 2008) (quoting *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996)). Doing so is particularly important in cases involving *pro se* litigants. *See Sharkey*, 778 F.3d at 774 (explaining that the Court is "very cautious in approving a district court's decision to deny pro se litigants leave to amend"). Indeed, a *pro se* litigant is entitled to an opportunity to amend unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Nordstrom*, 762 F.3d at 908 (cleaned up).[14]

## CONCLUSION

For the aforementioned reasons, this Court should reverse the district court's dismissal, or at a minimum grant Mr. Avila leave to amend.

---

[14] Indeed, this rule holds true "even if no request to amend the pleading was made." *Long*, 91 F.4th at 1336 (internal quotation marks omitted).

Dated: May 8, 2024          Respectfully submitted,

*/s/ Daniel M. Greenfield*
Daniel M. Greenfield*
Wynne Muscatine Graham
RODERICK & SOLANGE
  MACARTHUR JUSTICE CENTER
501 H Street NE, Suite 275
Washington, D.C. 20002
(202) 869-3434
daniel.greenfield@macarthurjustice.org
wynnemg@macarthurjustice.org

*Appointed Pro Bono Counsel for*
*Plaintiff-Appellant Andrew Avila*

*This brief was prepared with the substantial assistance of UCLA School of Law Prisoners' Rights Clinic students Catherine Charleston, Joseph Gaylin, and Brisely Martinez.

27

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32 and 9th Circuit Rule 32, I certify that:

This brief complies with the type-volume limitation of 9th Circuit Rule 32-1(a) because this brief contains 6,450 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

*s/ Daniel M. Greenfield*
Daniel M. Greenfield

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*s/ Daniel M. Greenfield*
Daniel M. Greenfield
